# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 03-3074

—————————

Romak USA, Inc., a Kansas Corporation, &ast;
&ast;
   Appellant, &ast;
&ast;
  v. &ast; Appeal from the United States
&ast; District Court for the
Marc Rich; Marc Rich & Co., &ast; Western District of Missouri
Holding GMBH, a Swiss Corporation, &ast;
formerly known as Marc Rich & Co. &ast;
Holding AG, &ast;
&ast;
   Appellees. &ast;

—————————

Submitted: April 15, 2004
Filed: September 24, 2004

—————————

Before WOLLMAN, McMILLIAN and RILEY, Circuit Judges.

—————————

McMILLIAN, Circuit Judge.

Romak USA, Inc., a Kansas corporation, appeals from a final judgment of the District Court for the Western District of Missouri[1] dismissing its claims against Marc Rich, a citizen of Switzerland and Israel, because of lack of personal jurisdiction and

—————————

[1]The Honorable Fernando J. Gaitan, United States District Judge for the Western District of Missouri.

dismissing with prejudice its claims against Marc Rich & Co., Holding GmbH, a Swiss corporation (Rich & Co. Holding).  We affirm.

**BACKGROUND**

For the purposes of this appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to Romak USA.  In so viewing, the evidence is as follows.[2]  In the early 1980s Dr. Milan Sladek formed Romak SA, a grain trading firm in Geneva, Switzerland.  Romak SA was the parent company, sole shareholder, and credit guarantor of Romak USA, a grain trading company incorporated in Kansas, with its principal place of business in Kansas City, Missouri.

In May 1997, after Romak SA suffered losses on grain sales, its banker recommended that Sladek sell Romak SA and its subsidiaries, including Romak USA.  The banker suggested Rich & Co. Holding, another Swiss trading firm, as a potential buyer.  Sometime that month, Sladek met in Switzerland with representatives of Rich & Co. Holding, including Marc Rich.  Sladek invited Rich & Co. Holding officials to conduct a due diligence audit of all Romak companies.  Romak USA and Rich & Co. Holding agreed that any contact with Romak employees would be for the sole purpose to determine whether Romak SA and its subsidiaries were candidates for acquisition.  In June 1997, Sladek told Romak USA's president, Stephen Wilde, about the possible sale of Romak SA to Rich & Co. Holding.

Negotiations continued throughout the summer of 1997.  In August 1997, Marc Rich had a telephone conversation with Romak USA's vice-president, Albert Conway.  Marc Rich told Conway about the negotiations and about his interest in

---

[2]Because of the state of the record on appeal, we cannot be certain that the names of several corporate entities are complete or technically accurate.  Any misstatement of such corporate names does not affect the disposition of the appeal.

establishing a grain trading company in the United States. From the conversation, Conway understood that if he wanted a position with the new Marc Rich company, he should stay at Romak USA.

By memo dated August 27, 1997, Wilde informed Romak USA employees that he spoke to Sladek on August 25 and Sladek had informed him that the Romak companies were being "sold and reorganized into the Marc Rich group of companies." Wilde also informed the employees that Romak USA would begin to shut down.

Also, in the summer of 1997, Rich & Co. Holding was negotiating to acquire Glibro Trading Holding and affiliated entities (Glibro). Frank Gleeson was one of the owners of Glibro. On August 21, 1997, Glibro and Rich & Co. Holding began integrating. After the sale closed in October 1997, the new venture was known as Novarco Agricultural Limited (Novarco), a subsidiary of Rich & Co. Holding. Donald Novotny was the president of the United States branch of Novarco. Gleeson became the chief executive officer of Marc Rich Agricultural and, after six months, chief executive officer of Marc Rich Investment. Some time after August 21, 1997, at the request of Marc Rich, Gleeson participated in the negotiations between Romak SA and Rich & Co. Holding.

On September 15, 1997, Gleeson called Wilde to tell him that the negotiations between the "Marc Rich Group" and Romak SA were not going well. On that date, Wilde terminated a trader, Paul Frick, who began working for Glibro. On September 18, 1997, Gleeson again telephoned Wilde to inform him that the "Marc Rich Group" was not going to buy Romak SA, but instead would buy the assets of Romak USA. During the conversation Gleeson also told Wilde that "Sladek had given the Marc Rich Group the authority to negotiate directly with Romak USA employees regarding their employment with the anticipated Marc Rich venture in America" and that Romak USA employees would be hired by the new venture.

In a September 19, 1997, fax, Wilde informed Sladek that he was prepared to liquidate Romak USA. On September 25, 1997, based on Gleeson's representations and a September 18, 1997, fax by Sladek, Wilde terminated himself and Conway. On October 3, 1997, Sladek informed Wilde that Romak USA should not be liquidated. However, Wilde continued to "negotiate with the Marc Rich Group regarding [its new] American venture." In early October 1997, Gleeson and Novotny traveled to Kansas City, Missouri, and offered Wilde and Conway employment with Novarco. Eventually, Novarco bought Romak USA assets.

In March 1998, Romak USA filed a lawsuit in Missouri state court against Wilde, Conway, and Frick, alleging breach of fiduciary duty and conspiracy. The complaint asserted that because of the defendants' actions Romak SA was forced to sell Romak USA "to the Marc Rich Group at a significantly reduced price." Romak USA later dismissed the action.

In October 2001, Romak USA filed this diversity action in federal district court against Marc Rich and Rich & Co. Holding. Specifically, the complaint alleged that during August and September 1997, "Marc Rich individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson," made false representations to Romak USA and that "Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson," had tortiously interfered with Romak USA's business and contractual relationships with its employees. The complaint also alleged that "Marc Rich, individually, and Rich & Co. Holding" conspired to tortiously interfere with contractual and business relationships.

In February 2002, Marc Rich filed a motion to dismiss for lack of personal jurisdiction. Among other things, he submitted Conway's affidavit, in which Conway stated:

> In August 1997, while I was still employed by Romak USA, Mr. Marc Rich let me know he was having discussions with Romak S.A. about his interests in establishing a grain trading company and having an office in the United States. I understood from our conversation that I should stay at Romak U.S.A. and this would position me to have an opportunity to work for the new Marc Rich grain company in the United States.

Romak USA opposed the motion, asserting that Marc Rich and his agents, Gleeson and Novotny, had sufficient contacts with Missouri to satisfy the state's long-arm statute and federal due process requirements, submitting deposition excerpts and affidavits from the dismissed state case.

In August 2002, the district court granted Marc Rich's motion to dismiss. The district court held that Romak USA had failed to produce evidence that Marc Rich had sufficient minimum contacts with Missouri to satisfy due process. The district court also held that Romak USA failed to present evidence that Gleeson and Novotny were the personal agents of Marc Rich.

In August 2002, the district court granted Rich & Co. Holding's motion to strike Romak USA's expert witness reports on lost profits. In June 2003, Romak USA moved to dismiss its claims against Rich & Co. Holding without prejudice. However, in its motion, Romak USA stated that it did not "intend to pursue Rich & Co. Holding in any future litigation." The district court dismissed the claims against Rich & Co. Holding, but did so with prejudice. This appeal follows.

**DISCUSSION**

We review the personal jurisdiction issue de novo. Dever v. Hentzen Coatings, Inc., No. 03-3695, 2004 WL 1872710, at *1 (8th Cir. Aug. 23, 2004) (Dever). As Romak USA points out, "[t]o defeat a motion to dismiss for lack of personal

jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction[,]" and may do so by affidavits, exhibits, or other evidence. Epps v. Stewart Info. Serv. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (Epps). Although we must view the evidence in the light most favorable to Romak USA and resolve factual conflicts in its favor, as "[t]he party seeking to establish the court's in personam jurisdiction[,] [it] carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." Id.

In a diversity action, "[a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever, 2004 WL 1872710, at *1. As relevant here, the Missouri long-arm statute provides for personal jurisdiction over "[a]ny person . . . who in person or through an agent . . . commi[ts] a tortious act within the state[,]" as to a cause of action arising from the commission of the act. Mo. Rev. Stat. § 506.500.1(3).

Because "the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002) (internal quotation omitted); see also Dever, 2004 WL 1872710, at *1 ("Because the long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent, our inquiry is limited to whether the exercise of personal jurisdiction comports with due process.") (internal citation omitted).[3] To satisfy due process a defendant must

---

[3]As Marc Rich points out, in some cases we have analyzed personal jurisdiction by first considering "whether the state of Missouri would accept jurisdiction under the facts of this case[,]" and then considering whether the exercise of jurisdiction would offend due process. Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706-07 (8th Cir. 2003). Under that analysis, we agree with Marc Rich that he did not commit a tortious act in Missouri, and thus the district court lacked jurisdiction.

-6-

have sufficient minimum contacts with the forum state "such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id., at *2 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)).  More particularly, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Moreover, in a case such as this involving specific personal jurisdiction, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id.  In other words, the cause of action must "'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (Lakin) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).[4]  In determining whether the district had personal jurisdiction over Marc Rich, we will consider "(1) the nature and quality of [his] contacts with [Missouri]; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of [Missouri] in providing a forum for its residents; and (5) [the] convenience of the parties." Dever, 2004 WL 1872710, at *2 (internal quotation omitted).  We give "significant weight . . . to the first three factors." Id.

Romak USA argues that Marc Rich had sufficient minimum contacts in Missouri, citing Conway's affidavit describing an August 1997 telephone conversation he had with Marc Rich.  The affidavit does not suffice.  In this case, the affidavit does not even establish that Marc Rich placed the telephone call to Conway

---

[4]A court may also exercise general personal jurisdiction over a "defendant who who has continuous and systematic contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Dever v. Hentzen Coatings, Inc., No. 03-3695, 2004 WL 1872710, at *2 (8th Cir. Aug. 23, 2004) (internal quotation marks omitted).

in Missouri. Conway did not state who placed the call or where the conversation took place. In any event, considering the nature of the call and its relations to the cause of action, the affidavit does not provide evidence that Marc Rich committed any act giving rise to the lawsuit. He did not misrepresent the state of the negotiations. According to Conway, Marc Rich discussed the negotiations with Romak SA and his desire to establish a grain trading company with an office in the United States. Nor did he try to lure Conway away from Romak USA. To the contrary, Conway stated that he "understood from [his] conversation [with Marc Rich] that [he] should stay at Romak USA."

Romak USA also argues that the district court had personal jurisdiction over Marc Rich through the acts of his agents, Gleeson and Novotny. Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, "[a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority." Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc., 932 S.W.2d 877, 879 (Mo. Ct. App. 1996). We also note that express authority and apparent authority arise from the acts of the principal, not the alleged agent. United Missouri Bank v. Beard, 877 S.W.2d 237, 240-41 (Mo. Ct. App. 1994). In this case, Romak USA failed to present evidence that, when Gleeson and Novotny contacted Wilde or Conway, they were acting in the scope of their authority as personal agents of Marc Rich.

In the district court and on appeal, Romak USA often confuses Marc Rich, the individual, with Rich & Co. Holding. As Marc Rich points out, in the statement of facts in his opening brief, Romak USA never refers to Rich & Co. Holding, but only to Marc Rich. Nor did Romak USA make an effort in the district court to distinguish Marc Rich, the individual, from Rich & Co. Holding. In support of its opposition to Marc Rich's motion to dismiss, Romak USA submitted deposition excerpts from the dismissed Missouri state court action against Wilde, Conway, and Frick. In one deposition Romak USA's counsel, who took all the depositions of record, admitted

that he was "confused about the names of the Marc Rich entities" and that when he referred to "'Marc Rich' throughout these questions having to do with 1997, [he] was referring to Marc Rich & Company Holding AG." In other depositions, counsel was equally confused. For example, in Gleeson's deposition, counsel referred to a document with the "Marc Rich letterhead." However, the document had the letterhead of Rich & Co. Holding. Although Romak USA argues that Marc Rich had given Gleeson authority to hire new employees for Novarco, the document on which it relies has the letterhead of Rich & Co. Holding.

Although in its reply brief, Romak USA suggests that Marc Rich was the alter ego of Rich & Co. Holding, at oral argument it conceded that it offered no evidence in support of an alter ego theory, as it was required to do. See Epps, 327 F.3d at 649; East Attucks Cmty. Housing v. Old Republic Sur. Co.,114 S.W.3d 311, 321-22 (Mo. Ct. App. 2003).

Romak USA also argues that the district court abused its discretion in striking the reports of its expert witness on lost profits in its action against Rich & Co. Holding. This issue is moot. In the district court, Romak USA represented that it did "not intend to pursue Defendant Rich & Co. Holding in any future litigation." In this court, Romak USA represents that "there will be no retrial of Rich & Co. Holding regardless of the outcome of this appeal." Brief for Appellant at 49. "Federal courts are not empowered 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Republican Party of Minnesota v. Klobuchar, No. 03-2801, 2004 WL 1900318, at*3 (8th Cir. Aug. 26, 2004) (quoting Church of Scientology v. United States, 506 U.S. 9, 12 (1992)). Such is the case here. For the same reason, we do not review Romak USA's argument that the district court abused its discretion in dismissing its claims against Rich & Co. Holding with prejudice, rather than without prejudice. See Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 215

(1st Cir. 1987) ("appeal from the dismissal of a count which the plaintiff no longer wishes to litigate . . . does not present a live controversy" and thus is moot).

Accordingly, we affirm the judgment of the district court.

_____