# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2460

_____

| | | |
|---|---|---|
| Viasystems, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| EBM-Papst St. Georgen | * | |
| GmbH & Co., KG, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 16, 2011
Filed: July 21, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Viasystems, Inc., a Missouri-based corporation, filed suit against EBM-Papst St. Georgen GmbH & Co., KG ("St. Georgen"), a German corporation, alleging several claims in contract and tort. The district court[1] concluded that it had neither specific nor general personal jurisdiction over St. Georgen and granted its motion to dismiss. Viasystems appeals, and, for the following reasons, we affirm.

_____

[1] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

## I. BACKGROUND

Viasystems, a Delaware corporation based principally in Saint Louis, Missouri, is a manufacturer of telecommunications equipment. In 2007, Viasystems contracted to manufacture base units for Ericsson A.B., a Swedish company. Part of each base unit consisted of a cooling fan, and, at Ericsson's prompting, Viasystems purchased cooling fans that were manufactured by St. Georgen. The fans were manufactured in St. Georgen's Herbolzheim, Germany plant and shipped to Shanghai, China, where they were sold to ebm-papst Shanghai, a Chinese corporation, which resold them to Viasystems' Chinese subsidiary. After the fans were installed, the completed base units were sold to Ericsson for use in mobile phone facilities in Japan. At no point did the fans or base units enter the United States.

Ericsson subsequently informed St. Georgen that the cooling fans in some of the base units were failing, a malfunction that St. Georgen traced to a manufacturing defect. Ericsson replaced the fans at a cost of over $5,000,000 and demanded reimbursement from Viasystems. Viasystems partially reimbursed Ericsson and, in turn, made demand on St. Georgen to assume responsibility for the replacement costs. After several months of negotiations, resulting in a partial payment by St. Georgen and its insurer to Viasystems of $1,494,941, St. Georgen declined to pay anything further. Viasystems filed suit in federal court, claiming diversity jurisdiction.

Viasystems' amended complaint included counts for breach of implied warranties of merchantability and fitness for a particular purpose, negligence, noncontractual indemnity, and tortious interference, and requested damages and declaratory judgment. St. Georgen filed a motion to dismiss for lack of personal jurisdiction. In response, Viasystems argued that both specific and general personal jurisdiction existed and that, in the alternative, the court at least should allow it to conduct jurisdictional discovery before dismissing the case. The district court granted St. Georgen's motion to dismiss and denied Viasystems' motion for

jurisdictional discovery, concluding that it lacked personal jurisdiction over St. Georgen and that the basic facts supporting this conclusion were undisputed, making further discovery unwarranted. Viasystems appeals, contending that the district court erred in dismissing for lack of personal jurisdiction and abused its discretion in refusing to allow further jurisdictional discovery.

## II.     DISCUSSION

### A.     Personal Jurisdiction

We review the district court's dismissal for lack of *in personam* jurisdiction *de novo*. *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010). We require the party asserting jurisdiction to make only a *prima facie* showing of jurisdiction and will view the evidence in the light most favorable to that party. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). Nevertheless, "[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

Personal jurisdiction over a defendant represents the power of a court to enter "a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978). Personal jurisdiction can be specific or general. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) (alterations in original) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). Viasystems asserts that St. Georgen is subject to both specific

and general personal jurisdiction, either of which would allow the case to proceed. We address each in turn.

### 1.    Specific Jurisdiction

Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment. *See Romak*, 384 F.3d at 984.[2]  In Missouri, specific personal jurisdiction is authorized only to the extent that "the [cause of] action arose out of an activity covered by [Missouri's] long-arm statute." *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo. banc 2000).  Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state.  Mo. Rev. Stat. section 506.500.1.  These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction, within the specific categories enumerated

---

[2] Although cases from our circuit collapse these two inquiries out of a belief that "the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," *Romak*, 384 F.3d at 984 (quoting *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002)), the more recent decisions of the Missouri Supreme Court—which the Rules of Decision Act, 28 U.S.C. § 1652, binds us to apply in this diversity case, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010)—analyze the two questions separately. *See Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. banc 2010) ("First, the court inquires whether the defendant's conduct satisfies Missouri's long-arm statute.  If so, the court next evaluates whether . . . asserting personal jurisdiction over the defendant comports with due process." (internal citations omitted)); *see also Angoff v. Marion A. Allen, Inc.*, 39 S.W.3d 483, 486 (Mo. banc 2001); *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997).  Accordingly, we follow the Missouri Supreme Court's analysis.  However, the result of this appeal does not turn on this choice, since it is the due process inquiry that ultimately is dispositive.

in the statute[], to the full extent permitted by the [D]ue [P]rocess [C]lause." *State ex rel. Metal Serv. Ctr. of Ga, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

On appeal, Viasystems contends that St. Georgen is subject to specific personal jurisdiction because, in the months before Viasystems initiated the instant lawsuit, St. Georgen sent several e-mails, made phone calls, and made a partial payment to Viasystems in Missouri before refusing to pay anything further. Viasystems alleges that St. Georgen's eventual refusal to pay Ericsson's replacement costs in full constitutes tortious interference with Viasystems' contract with Ericsson, a tort that negatively affected Viasystems in Missouri. Viasystems concludes that St. Georgen thus falls within the "tortious act" category of the long-arm statute pursuant to the "effects test." *See generally Calder v. Jones*, 465 U.S. 783, 789 (1984) ("California is the focal point both of the [out-of-state conduct] and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their [out-of-state] conduct in California."). We need not decide whether these actions by St. Georgen suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold.

Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The touchstone of the due-process analysis remains whether the defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The fundamental inquiry is whether the defendant has "purposefully availed" itself of the "benefits and protections" of the forum state, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

482 (1985), to such a degree that it "should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

St. Georgen's incidental contacts with Missouri—scattered e-mails, phone calls, and a wire-transfer of money to Viasystems in Missouri—do not constitute a "deliberate" and "substantial connection" with the state such that St. Georgen could "reasonably anticipate being haled into court there." *See Burger King Corp.*, 471 U.S. at 474-75 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Indeed, these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction. *See id.* at 475; *see also Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (holding that 100 telephone calls by defendant to plaintiff were "insufficient, alone, to confer personal jurisdiction"); *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984) (holding that defendant's "phone conversations and written correspondence" with plaintiffs were "not sufficient, under the [D]ue [P]rocess [C]lause, to justify an exercise of personal jurisdiction").

Nor can jurisdiction be based on the effects on Viasystems in Missouri of St. Georgen's refusal to pay Ericsson's replacement costs in full. Due process allows a state to assert personal jurisdiction over a defendant based on the in-state effects of defendants' extraterritorial tortious acts only if those acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson*, 614 F.3d at 796 (alteration in original) (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)). Even assuming Viasystems could satisfy factors (1) and (3), St. Georgen's refusal to pay the replacement costs in full simply was not "uniquely or expressly aimed at the forum state," *id.* (quoting *Lindgren*, 312 F. Supp. 2d at 1132), or "performed for the very purpose of having [its] consequences felt in the forum state," *Dakota Indus. v.*

*Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989)), in such a way that St. Georgen should "ha[ve] clear notice that it is subject to suit there," *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Accordingly, Viasystems has not carried its burden of establishing a *prima facie* case that specific personal jurisdiction can be asserted over St. Georgen.

### 2.    General Jurisdiction

If a court has general jurisdiction over a defendant it can "adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Miller*, 528 F.3d at 1091 (quoting *Bell Paper Box*, 22 F.3d at 819). Like specific jurisdiction, general jurisdiction can only be asserted insofar as it is authorized by state law and permitted by the Due Process Clause. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). The Missouri Supreme Court has held that general jurisdiction is properly asserted over an out-of-state corporation, under Missouri Law, when that corporation is "present and conducting substantial business in Missouri." *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 167 (Mo. banc 1999); *see also Wineteer v. Viet. Helicopter Pilots Ass'n*, 121 S.W.3d 277, 282 (Mo. Ct. App. 2003). We need not decide whether Missouri law authorizes general jurisdiction over St. Georgen, however, because we conclude that subjecting St. Georgen to general jurisdiction in Missouri also is not permitted by the Due Process Clause.

Because it extends to causes of action unrelated to the defendant's contacts with the forum state, general jurisdiction over a defendant is subject to a higher due-process threshold. A court may assert general jurisdiction over foreign corporations only if they have developed "continuous and systematic general business contacts," *Helicopteros Nacionales de Colom., S. A. v. Hall*, 466 U.S. 408, 416 (1984), with the forum state, "[so] as to render them essentially at home in the forum State," *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ---, 180 L. Ed. 2d 796, 803 (U.S. June 27, 2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 806; *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). On appeal, Viasystems proffers two theories in support of extending general personal jurisdiction over St. Georgen, both based on the activities of St. Georgen's regional distributors.[3]

First, Viasystems contends that St. Georgen is subject to general personal jurisdiction because the company that distributes its products in the United States, ebm papst, Inc. ("EPI"), acts as its agent, making EPI's Missouri contacts attributable to St. Georgen. "[A] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority." *Romak USA, Inc.*, 384 F.3d at 985 (quoting *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996)). Though it makes a half-hearted effort in this direction, Viasystems has not carried its burden of showing the existence of an actual agency relationship between St. Georgen and EPI. Viasystems' only argument is based on scattered statements on the website www.ebm-papst.com to the effect that EPI is St. Georgen's "at-home partner[]," and "represent[ative]," statements which Viasystems characterizes as "admissions." Even if these scattered marketing statements could support an inference that the two companies have a legally recognized agency relationship, St. Georgen cannot be held responsible for the statements on www.ebm-papst.com for the simple reason that this website is owned and operated not by St. Georgen, but by its corporate parent, ebm-papst Mulfingen GmbH & Co. KG ("Mulfingen").

---

[3] The district court also addressed whether general jurisdiction could be based on the website owned and run by St. Georgen's German parent corporation, pursuant to the test first laid out in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). On appeal, Viasystems disclaims any intent to found jurisdiction on the existence of this website, so we do not address the argument.

Viasystems' more vigorous argument is that an agency relationship should be implied between EPI and St. Georgen because EPI "performs services that are 'sufficiently important to [St. Georgen] that if it did not have a representative to perform them, [St. Georgen's] own officials would undertake to perform substantially similar services.'" *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1072-73 (E.D. Mo. 2008) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001)). We are not free to adopt this "agency theory" of jurisdiction because it is inconsistent with our precedent. Our cases consistently have insisted that "personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 648-49; *see also Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975).

To be sure, we have emphasized that determining whether personal jurisdiction exists in a given case "involves applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004). Moreover, in *Anderson* we recognized that even if the in-state subsidiary of a foreign corporation is not its corporate parent's alter ego, a lesser relationship between the two corporations remains a relevant factor in determining whether the foreign corporation "'purposefully directed its products to the United States,' and specifically to [the forum state], . . . 'through the distribution system it set up in this country,'" *id*. at 454—a basis for jurisdiction that we address below. However, this inquiry—whether a foreign corporation has established minimum contacts with the forum state through "pour[ing] its products into regional distributors," *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994)—should be kept conceptually separate from the question whether a subsidiary's contacts with the forum state should be attributed to a foreign parent

corporation through an agency theory. In answering this latter question, we have always required a degree of control and domination by the parent corporation that is absent here. *See Epps*, 327 F.3d at 648-49.

St. Georgen's lack of control and domination over EPI can be seen most clearly by considering the overarching corporate structure that links St. Georgen to EPI. St. Georgen itself is a wholly-owned-subsidiary of Mulfingen, a German corporation. Mulfingen and St. Georgen own 72 percent and 28 percent, respectively, of ebm Beteiligungs-GmbH, which is the sole owner of ebm-Industries Management Group, Inc., which, in turn, is the sole owner of EPI. St. Georgen's ownership of EPI is thus confined to a two-steps-removed 28-percent interest. St. Georgen did not create EPI, has no control or authority over EPI, and has no directors or officers in common with EPI. The relationship between these two companies is too attenuated to support the assertion of personal jurisdiction over St. Georgen based on the activities of EPI.

Viasystems next contends that St Georgen is subject to general personal jurisdiction in Missouri because it "heads a distribution network, thus 'realizing the much greater economic benefit of multiple sales in distant forums.'" *Barone*, 25 F.3d at 613 (quoting *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986)). While our circuit has held that the mere "placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State," *Falkirk Mining Co. v. Japan Steel Works*, 906 F.2d 369, 376 (8th Cir. 1990); *see also Guinness Imp. Co. v. Mark VII Distribs.*, 153 F.3d 607, 615 (8th Cir. 1998), we have been willing to recognize a variant of "stream-of-commerce" jurisdiction over a foreign manufacturer that "'pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area," *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (quoting *Barone*, 25 F.3d at 615). Because Viasystems' causes of action do not arise out of the distribution of St. Georgen's products in Missouri, there is no dispute that Viasystems must use this

"stream of commerce" theory to support general, rather than specific, jurisdiction. However, when our circuit's decision in *Barone* established the variant of "stream-of-commerce" jurisdiction on which Viasystems now seeks to rely, we were careful to note that "stream of commerce" jurisdiction is "a type of specific jurisdiction (as opposed to general jurisdiction)." *Barone*, 25 F.3d at 612. Indeed, the Supreme Court recently clarified that placing products in "the stream of commerce" is "[a] connection so limited between the forum and the foreign corporation [that it] is an inadequate basis for the exercise of general jurisdiction." *Goodyear*, 180 L. Ed. 2d at 803. The Court rejected "the sprawling view of general jurisdiction" that would make "any substantial manufacturer or seller of goods . . . amenable to suit, on any claim for relief, wherever its products are distributed." *Id.* at 809.

Our precedent and the Supreme Court's decision in *Goodyear* make clear that even if a foreign corporation "'pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area," *Vandelune*, 148 F.3d at 948 (quoting *Barone*, 25 F.3d at 615), this connection alone is "so limited" that it "is an inadequate basis for the exercise of general jurisdiction." *See Goodyear*, 180 L. Ed. 2d at 803.[4] Accordingly, we conclude that Viasystems has not made a *prima facie* case for the existence of general personal jurisdiction over St. Georgen.

## B.     Jurisdictional Discovery

Finally, Viasystems argues that even if it has not established a *prima facie* case for the existence of personal jurisdiction, it is entitled to conduct jurisdictional

---

[4] Any suggestion in *Steinbuch v. Cutler*, 518 F.3d 580 (8th Cir. 2008), that a seller might have formed contacts "so continuous and systematic as to warrant general personal jurisdiction," *id.* at 589, simply by "deliver[ing] its products to a regional distributor with an expectation that the distributor would penetrate the forum state," *id.* at 587-88, does not survive *Goodyear*.

-11-

discovery "so that [it can] further support its assertion of jurisdiction." We review the district court's denial of Viasystems' motion for jurisdictional discovery for abuse of discretion. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008).

The district court concluded that jurisdictional discovery was unwarranted because "[t]his is not a case in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed." *Viasystems, Inc. v. ebm-papst St. Georgen GmbH & Co. KG*, No. 09-cv-02076, 2010 WL 2402834, at \*9 (E.D. Mo. June 11, 2010). We agree. Viasystems does not dispute the facts central to our conclusion, such as St. Georgen's lack of ownership and control of its United States distributor, EPI. Moreover, even if Viasystems' factual allegations—that St. Georgen had phone and e-mail contacts with Missouri; refused to pay Ericsson's replacement costs in full, causing damage in Missouri; and "poured its products" into Missouri through its local distributor, *see Barone*, 25 F.3d at 615, which acted as its agent by performing services that were critical to its operation, *see Unocal Corp.*, 248 F.3d at 928-29—are taken as true, for reasons already mentioned these allegations are insufficient to establish either specific or general personal jurisdiction.

Viasystems suggests that further discovery "would likely show" that St. Georgen "likely knew of the independent distributors and their locations in Missouri, . . . knew of, and possibly paid for, advertising and marketing efforts for its products in Missouri," that "tens or hundreds of millions of dollars of [St. Georgen's] product is being sold in Missouri," and that "[St. Georgen's] employees traveled to Missouri for trade shows, training, marketing, or to provide technical support." Many of these allegations concern the relationship between St. Georgen and its distributor and therefore, even if proven, would be insufficient to support general jurisdiction, as discussed above. Moreover, Viasystems' assertion that jurisdictional discovery "would likely" reveal these facts is entirely speculative, and "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Dever v. Hentzen*

*Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) (quoting *Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).  Accordingly, the district court did not abuse its discretion in denying Viasystems' motion for jurisdictional discovery.

## III.   CONCLUSION

Because St. Georgen does not have sufficient "minimum contacts" with Missouri, the maintenance of this suit would offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). We therefore affirm the dismissal of the case for lack of personal jurisdiction, and we likewise affirm the denial of Viasystems' motion for jurisdictional discovery.

———————————————————