**FASTPATH, INC., Plaintiff,**

v.

**ARBELA TECHNOLOGIES CORP., Defendant.**

No. 4:13–cv–00143.

United States District Court, S.D. Iowa, Central Division.

July 3, 2013.

---

Amanda G. Jansen, Edward W. Remsburg, Ahlers & Cooney PC, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is Arbela Technologies Corp.'s ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction ("Defendant's Motion"), filed April 3, 2013. Clerk's No. 2. Fastpath, Inc. ("Plaintiff") resisted the Motion on April 22, 2013. Clerk's No. 3. Defendant replied on May 6, 2013. Clerk's No. 6. The Motion is fully submitted.

## I. FACTUAL BACKGROUND

In June 2012, Plaintiff, an Iowa company, and Defendant, a California company, entered into a mutual confidentiality agreement[1] ("Agreement") containing a choice-of-law provision specifying that the "Agreement shall be construed and interpreted in accordance with the laws of the state of Iowa, without giving effect to its conflict of law provisions." Clerk's No. 2-2 at 17, 20. The Agreement also includes a covenant not to compete ("Covenant"). *See id.* at 19. Defendant's alleged breach of the Covenant brought about this lawsuit.

Prior to executing the Agreement, Defendant "directed at least ten emails to ... [Plaintiff] in the State of Iowa ... [and] also approached ... [Plaintiff] on at least three occasions at conferences and trade shows[—taking place outside Iowa—]in which ... [Plaintiff] clearly held itself out as an Iowa company." Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Resistance Br.") (Clerk's No. 3) at 6. After executing the Agreement, Defendant attended several presentations by Plaintiff in Seattle, Washington. *Id.* Additionally, Defendant directed at least one more email and three telephone calls to Plaintiff. *Id.* at 7-8.

Two other circumstances deserve attention. First, Defendant has no office or employees in Iowa and conducts no business within the State. Second, the Agreement does not contain a forum selection clause. *See* Clerk's No. 2-2 at 17-21.

## II. STANDARD OF REVIEW

When a defendant moves to dismiss a lawsuit for a lack of personal jurisdiction, the plaintiff—not the defendant—bears the burden of proof. *Dairy Farm-*

*ers of Am., Inc. v. Bassett & Walker Int'l, Inc.,* No. 5:11–cv–6052, 2012 WL 601232, at *1-2, 2012 U.S. Dist. LEXIS 22859, at *4 (W.D.Mo. Feb. 23, 2012) (internal citation omitted). The plaintiff is entitled to the benefit of all factual disputes. *Id.* at *1-2, 2012 U.S. Dist. LEXIS 22859, at *4-5. To conclude that it has personal jurisdiction over a non-resident defendant, a court must determine both that the requirements of the forum state's long-arm statute are met and that asserting personal jurisdiction over the defendant comports with due process. *Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 519, 522 (8th Cir.1996). Asserting personal jurisdiction over a defendant does not offend due process if the defendant has purposefully established minimum contacts with the forum state. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). "[In other words,] it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations and quotation marks omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ... or the unilateral activity of another party or a third person...." *Id.* (internal citations and quotation marks omitted). "[Personal] [j]urisdiction is proper ... [only] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (internal citations omitted). Physical presence within the fo-

---

**1.** The parties executed the Agreement "solely for the purpose of evaluating and negotiating a possible investment, acquisition, divestiture, partnership and/or joint venture transaction." Clerk's No. 2-2 at 17. No such transaction took place, however.

rum state is, however, not required. *Id.* at 476, 105 S.Ct. 2174.

■ In addition to these basic due process principles, courts in this Circuit analyze the following five factors in deciding whether asserting personal jurisdiction over a non-resident defendant violates due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi–Tel Holdings, Inc.*, 89 F.3d at 522–23 (internal citations omitted). The first three factors are deemed primary while the last two—secondary. *Id.* at 523 (internal citations omitted). With this legal framework in mind, the Court turns to analyzing Defendant's Motion.

## III. ANALYSIS

■ Seeking dismissal of this lawsuit, Defendant argues that it has no minimum contacts with Iowa.[2] Specifically, Defendant claims that entering into an agreement containing an Iowa choice-of-law provision with an Iowa corporation and directing "a few emails" and telephone calls to Plaintiff in Iowa do not amount to minimum contacts sufficient for personal jurisdiction. Def.'s Br. in Supp. of Its Mot. ("Def.'s Br.") (Clerk's No. 2–1) at 8–11. In resisting dismissal, Plaintiff relies on the following arguments. First, Plaintiff

claims that due to the unique circumstances of this case, the Agreement's choice-of-law provision "alone is nearly enough[3] to find personal jurisdiction over ... [Defendant]." Pl.'s Resistance Br. at 10. Specifically, Plaintiff contends that because California, which is the only other possible forum for this lawsuit, "has an outright prohibition on covenants not to compete," the Court should conclude that asserting personal jurisdiction over Defendant does not offend "[t]raditional notions of fair play and substantial justice." *Id.* at 10–13 (internal citations and quotation marks omitted). Second, Plaintiff argues that even if the Iowa choice-of-law provision alone is not enough for purposes of personal jurisdiction, that provision is sufficient to confer personal jurisdiction over Defendant when considered together with the following facts: (1) that Defendant actively pursued a business relationship with Plaintiff, an Iowa company and directed communications to Plaintiff in Iowa in connection with the Agreement; (2) that "the Agreement contemplated additional activity in Iowa"; and (3) that "the effects of ... [Defendant's alleged] breach of the [C]ovenant ... are centered on Iowa." *Id.* at 13–17. Third, Plaintiff points out that courts in this and other Circuits have found personal jurisdiction to exist even in lesser circumstances than those present in this lawsuit. *Id.* at 17–21.

■ At the outset, the Court notes that whether a defendant has minimum contacts with the forum state is not a mechan-

2. The Iowa long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005). Therefore, the Court's analysis is limited solely to deciding whether personal jurisdiction over Defendant in Iowa offends due process.

3. A literal reading of "nearly enough" suggests that the Agreement's Iowa choice-of-law

provision is by itself insufficient for personal jurisdiction over Defendant. Yet, the thrust of Plaintiff's argument is that this provision *alone* permits exercising personal jurisdiction over Defendant without offending due process. *See* Pl.'s Resistance Br. at 10–13. The Court surmises that the latter interpretation represents Plaintiff's true position on this issue.

ical test, but, rather, depends on the facts of each case. *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (internal citations omitted). The Court also "recognize[s] that this determination is one in which few answers will be written in black and white, [and that] [t]he greys are dominant and even among them the shades are innumerable." *Id.* (internal citation and quotation marks omitted). The present case illustrates this point.

## A. The Covenant's Enforceability

The parties disagree whether the Covenant is enforceable under California law. Defendant asserts that covenants not to compete are enforceable if necessary to protect a plaintiff's trade secrets. Def.'s Reply at 1–2. Plaintiff, however, contends that this trade secret exception no longer exists, *see* Pl.'s Mot. for Leave to File Suppl. Authority (Clerk's No. 7) at 1–2, and that, therefore, Iowa is the only available forum for enforcing the Covenant, *see* Pl.'s Resistance Br. at 10.

The parties' dispute, however, is of no consequence to the personal jurisdiction inquiry. Even assuming that no forum other than Iowa would enforce the Covenant, such forum unavailability does nothing to ensure that this Court's assertion of personal jurisdiction over Defendant comports with due process.[4] California's alleged categorical refusal to recognize and enforce covenants not to compete does not boost Defendant's minimum contacts with Iowa.[5] Indeed, if forum unavailability were of such paramount importance to the personal jurisdiction inquiry as Plaintiff suggests, then personal jurisdiction over Defendant would comport with due process even if Defendant did not pursue a business relationship with Plaintiff, did not direct any communications to Plaintiff in Iowa, and the effects of Defendant's alleged breach of the Covenant were not centered on Iowa. There is simply no legal authority for such a conclusion.

## B. Minimum Contacts

■ For reasons that follow, the Court has determined that Plaintiff has not shown the requisite for personal jurisdiction minimum contacts between Defendant and Iowa. In urging the contrary conclusion, Plaintiff relies on the following: (1) Defendant actively pursued a business relationship with Plaintiff, an Iowa company; (2) Defendant directed more than ten communications to Plaintiff in Iowa regarding the Agreement; (3) Defendant executed the Agreement knowing that it calls for application of Iowa law;[6] and (4) "the

---

**4.** Notably, Plaintiff cites no legal authority—nor has the Court found any—supporting the contrary conclusion. To be fair, Plaintiff cites three cases that purportedly support its position, but none of them is on point. True, both *Anderson v. Dassault Aviation* and *United States v. One Oil Painting* deny the respective defendants' motions to dismiss for a lack of personal jurisdiction, in part, due to the fact that the plaintiffs had no other fora to litigate their lawsuits. 361 F.3d 449, 455 (8th Cir. 2004); 362 F.Supp.2d 1175, 1188 (C.D.Cal. 2005). The courts in those cases, however, considered the availability of other fora only after concluding that the defendants had minimum contacts with the respective forum states. *See Anderson*, 361 F.3d at 453–54;

*One Oil Painting*, 362 F.Supp.2d at 1187. The third case—*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)—fares no better. Contrary to Plaintiff's argument, *Rudzewicz* does not stand for the proposition that the Covenant's potential unenforceability under California law somehow makes up for the otherwise lacking minimum contacts with Iowa.

**5.** Because the Court so concludes, Plaintiff's Motion for Leave to File Supplemental Authority (Clerk's No. 7) is DENIED AS MOOT.

**6.** The Court notes that while the Agreement includes an Iowa choice-of-law provision, it does not contain a forum selection clause

Agreement contemplate[s] additional activity in Iowa."[7] Pl.'s Resistance Br. at 13–15. The first three factors—although rele-

designating Iowa, or any other jurisdiction, as the place for litigating disputes arising out of the Agreement.

7. Plaintiff also argues that the Court can constitutionally assert personal jurisdiction over Defendant under "the 'effects test' set forth in *Calder v. Jones*, 465 U.S. 783 [104 S.Ct. 1482, 79 L.Ed.2d 804] (1984)." Pl.'s Resistance Br. at 16–17. Plaintiff recognizes that the *Calder* effects test is inapplicable in breach-of-contract cases, *see Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir.2010) (explaining that "a defendant's tortious acts can serve as a source of personal jurisdiction," provided that certain other conditions are met), but submits that the Court should nevertheless apply this test because "[defendant's] conduct could be characterized as tortious interference with . . . [Plaintiff's] prospective business relationships." *Id.* at 16. The Court is not persuaded.

Although the plaintiff in *Viracon, Inc. v. J & L Curtain Wall, LLC* presented a stronger case for applying the *Calder* effects test by asserting tort claims in addition to its contract claims, the court nevertheless declined to apply the test. *See* 929 F.Supp.2d 878 (D.Minn. 2013). Finding "at least two problems with [the plaintiff's contrary] argument," *id.* at 885, the court concluded that the *Calder* effects test was inapplicable, and stated as follows:

First, while *Calder* has been described as an "effects" test, "more than mere effects" supported that holding. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam) (even when intentional tort is alleged and defendant knows a resident plaintiff will be affected, "more than mere effects" are necessary "to bestow personal jurisdiction"). To invoke *Calder*, a plaintiff must show the defendant's acts were "performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir.1991) (citation omitted). In other words, the challenged conduct must be "uniquely aimed at the forum state," *id.* at 1391, which requires more than knowledge that a Minnesota company will suffer consequences from the conduct. *See, e.g., Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594–95 (8th Cir.2011) (failure to pay in-state plaintiff "was not uniquely or expressly aimed at the forum state or performed for the very purpose of having [its] consequences felt in the forum state") (internal quotation marks and citations omitted); *Superior Edge, Inc. v. Maricopa Cnty. Cmty. Coll. Dist.*, 509 F.Supp.2d 786, 793–94 (D.Minn.2007) (Ericksen, J.). This is all Viracon has proffered here. (*See* Mem. in Opp'n at 29 (J & L "understood Viracon was a Minnesota-based company" and hence "knew [its] tortious conduct would affect Viracon in Minnesota").) "[A]bsent additional contacts, mere effects in [Minnesota] are insufficient to confer personal jurisdiction" over J & L. *Arden*, 614 F.3d at 797.

Second, in the Court's view this is quintessentially a breach-of-contract case, not a tort case. . . . Although Viracon alleges that J & L's conduct constituted theft and conversion, the Court does not believe it can plead its way into personal jurisdiction over J & L by sprinkling tort theories onto a Complaint that, at its core, sounds in breach of contract. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir.1997) (plaintiff could not plead around forum-selection clause in contract by asserting only tort claims; "We think it is clear that Terra's tort claims involve the same operative facts as would a parallel claim for breach of contract. Admittedly, Terra did not raise any claims for breach of contract in its complaint. Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause. Although we recognize that Terra's claims are alleged as tort claims, Terra plainly could have asserted a parallel claim for breach of contract in the same complaint.").

*Id.* at 885–86. The Court finds *Viracon* persuasive, and, accordingly, concludes that even if Plaintiff had asserted a tort claim in addition to or instead of its breach-of-contract claim, the Calder effects test would have still been inapplicable in this lawsuit for the same two reasons articulated by the *Viracon* court.

*Curtain Wall, LLC,* 929 F.Supp.2d 878 (D.Minn.2013) (finding no personal jurisdiction in a breach-of-contract case despite the numerous telephone, email, and fax communications between the parties and the Minnesota choice-of-law provision in the contract at issue); *see also Digi–Tel Holdings, Inc.,* 89 F.3d at 523–25 (affirming the district court's dismissal for a lack of personal jurisdiction where the defendant "sent numerous letters and faxes and made several telephone calls to Minnesota in connection with the ... contract," shipped four product samples to Minnesota, and the contract at issue contained a Minnesota choice-of-law provision); *but see Wessels v. Nat'l Med. Waste,* 65 F.3d 1427, 1434 (8th Cir.1995) (concluding that the district court had personal jurisdiction over the defendant where, in addition to the Minnesota choice-of-law provision and the substantial mail and telephone communication, a representative of the defendant traveled "to Minnesota [twice] to discuss obligations under the contract"). If the fourth factor, however, is present, i.e., the Agreement calls for some future consequences to occur in Iowa, then the Court *arguably* has personal jurisdiction over Defendant. *See Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174 (noting that personal jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State" and that courts should look to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in deciding whether the defendant has purposefully established minimum contacts with the forum State). Thus, the relevant inquiry becomes whether the Agreement contemplates any future consequences in Iowa.

The Agreement was meant to facilitate the sharing of information between the litigants "for the purpose of evaluating and negotiating a possible investment, acquisition, divestiture, partnership and/or joint venture transaction." Clerk's No. 2–2 at 17. It is, however, silent as to the location where the parties were to share such information. *See id.* at 17–20. Thus, while it may have been foreseeable at the time of executing the Agreement that at least some of the information exchange could occur in Iowa, nothing in the Agreement so requires. Additionally, the Covenant is not geographically limited to Iowa, but, rather, calls for a world-wide prohibition on the developing, marketing, sale, and licensing of products that are competitive with those developed, marketed, sold, or licensed by the other party to the Agreement.[8] Clerk's No. 2–2 at 19. Under these circumstances, the Court cannot conclude that the Agreement specifically contemplates future consequences in Iowa. In fact, Plaintiff admits that, to the extent it shared information with Defendant, such exchange occurred during Plaintiff's presentations in Seattle, Washington. *See id.* at 15 n. 4. It is similarly undisputed that Defendant's alleged violation of the Covenant—developing and marketing a software application that is deemed competitive with Plaintiff's products—did not occur in Iowa. Any software development work must have necessarily occurred outside of Iowa since Defendant has no employees or offices in Iowa and has never contracted with any Iowa citizen or company other than Plaintiff. *See* Clerk's No. 2–2 ¶¶ 3–5. As for the marketing of a competing product, while allegedly doing so on Defendant's website and via a public webinar presentation, *see* Decl. of Andy

8. Indeed, recognizing that the software application market is global, the litigants did not want to limit the geographic scope of the Covenant to Iowa, California, the United States, or in any other way. *See* Pl.'s Resistance Br. at·5.

Snook (Clerk's No. 3–1) ¶¶ 27–28, may have reached potential Iowa customers, nothing in the record before the Court indicates that Defendant's efforts were exclusively, or even predominantly, targeted at Iowa customers. *See Tutu. Couture, Inc. v. SML Sport, LLC,* No. 5:12–cv–05195, 2013 WL 395711, at *6, 2013 U.S. Dist. LEXIS 13179, at *16 (W.D.Ark. Jan. 31, 2013) (finding no personal jurisdiction over the defendants in Arkansas (despite the fact that some sales of the plaintiffs' merchandise occurred in Arkansas), in part, because the contract at issue did not "contemplate … that sales [of the plaintiffs' merchandise] in Arkansas would be proportionately greater than in any other state, nor that sales efforts would target Arkansas … [but rather imposed an obligation on the defendants] to sell [the] [p]laintiffs' merchandise throughout the nation and across the globe"). Therefore, since this litigation is the direct result of Defendant's conduct occurring outside of Iowa, the Court cannot constitutionally assert personal jurisdiction over Defendant. *Contra Bell Paper Box v. U.S. Kids,* 22 F.3d 816, 819 (8th Cir.1994) (reversing the district court's dismissal for a lack of personal jurisdiction because "the subject matter of th[e] dispute occurred entirely within the forum state"). The mere fact that such conduct harms an Iowa company does not mean that personal jurisdiction over Defendant comports with due process. *See Welsco, Inc. v. Brace,* No. 4:12–cv–00394, 2012 WL 3025143, at *3, 2012 U.S. Dist. LEXIS 103690, at *9 (E.D.Ark. July 24, 2012) (concluding that the "contract-specific considerations, standing alone, are fairly neutral and may not give rise to personal jurisdiction," where "[t]he terms and consequences of the contract directly impact[ed] an Arkansas corporation and an Oklahoma resident … [and] the alleged breach … [of the non-compete agreement occurred] in Oklahoma,

but … directly caus[ed] harm to an Arkansas corporation").

In summary, applying the five-factor test set forth above, *see supra* p. 973, convinces the Court that dismissing Plaintiff's claim for a lack of personal jurisdiction is the correct conclusion in this case. Plaintiff has failed to establish that the first two factors—the nature, quality, and quantity of Defendant's contacts with Iowa—weigh in favor of asserting personal jurisdiction over Defendant. While the third factor—the relationship between Defendant's contacts with Iowa and Plaintiff's cause of action—*arguably* weighs in favor of asserting personal jurisdiction over Defendant, it is not enough to overcome Defendant's lack of minimum contacts with Iowa. *See Digi–Tel Holdings, Inc.,* 89 F.3d at 523–25 (affirming the district court's dismissal for a lack of personal jurisdiction despite concluding that the defendant's contacts with the forum state were related to the cause of action). As for the fourth factor, while it is true that Iowa "has an interest in providing a forum for one of its residents [—Plaintiff—] … [such] interest is minimal … [where the] 'dispute … has no [real] connection to' this state." *See Viracon, Inc.,* 929 F.Supp.2d at 885 (internal citation omitted); *accord Digi–Tel Holdings, Inc.,* 89 F.3d at 525 ("Minnesota's interest in providing its residents with a forum cannot make up for the absence of minimum contacts."). The fifth "factor, party convenience, is in equipoise: litigating here would be more convenient for … [Plaintiff], while litigating in … [California] would be more convenient for … [Defendant]." *See Viracon, Inc.,* 929 F.Supp.2d at 885. Therefore, the facts of this case, when viewed through the prism of the five-factor test, do not meet the due process requirements for personal jurisdiction over Defendant.

### C. *Other Cases*

Plaintiff cites four cases, *see* Pl.'s Resistance Br. at 17–19, where the respective courts "found personal jurisdiction to exist in [purportedly] similar, and even lesser, circumstances" than those present in this case, *id.* at 17 (capitalization modified from original). The Court does not agree that any of these cases compels the denial of Defendant's Motion. Contrary to Plaintiff's assertion, both *Wessels* and *International Administrators, Inc. v. Pettigrew* make stronger cases for finding personal jurisdiction over the defendant than this lawsuit because the defendants in those cases actually traveled to the respective forum State to negotiate or discuss obligations under the contracts at issue. *See Wessels,* 65 F.3d at 1434; *Pettigrew,* 430 F.Supp.2d 890, 896 (S.D.Iowa 2006). *EFCO Corp. v. Aluma Systems, USA, Inc.* is inapposite because it determined that exercising personal jurisdiction over the defendants was proper under the *Calder* effects test, 983 F.Supp. 816, 821–23 (S.D.Iowa 1997), which the Court has already determined is inapplicable in this case, *see supra* p. 976, n. 7.

Finally, even putting aside the fact that *Vishay Intertechnology, Inc. v. Delta International Corp.* is a Fourth Circuit case and, therefore, not binding on the Court, it is distinguishable on its facts from the present lawsuit. *See* 696 F.2d 1062 (4th Cir.1982). Although *Vishay Intertechnology* was decided two years before *Calder*, it utilizes similar logic as *Calder* in concluding that the district court erred in holding that asserting personal jurisdiction over the defendant would violate due process. *See id.* at 1068–69 (explaining that the defendant's intent to inflict a foreseeable injury upon the plaintiff in the forum State and the fact that the plaintiff's claim arises out of the defendant's contacts ·with the forum State are of paramount importance

in deciding whether due process permits the assertion of personal jurisdiction over the defendant). Furthermore, the *Vishay Intertechnology* court noted that "[the] plaintiff seeks relief under the . . . [forum State's] unfair trade practices statute . . . [and that] the cause of action centers on the production of $130,000.00 worth of goods that would have been manufactured in [the forum State]." *Id.* at 1069.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion To Dismiss for Lack of Personal Jurisdiction (Clerk's No. 2) is GRANTED.

IT IS SO ORDERED.