**FIRST AMERICAN TITLE INSURANCE COMPANY, Plaintiff,**

v.

**MOODY NATIONAL M DES MOINES IA, L.L.C. and Brett C. Moody Investments, L.L.C., Defendants.**

No. 4:12–cv–00113.

United States District Court, S.D. Iowa, Central Division.

Jan. 17, 2014.

Mitchell R. Kunert Nyemaster Goode West Hansell & O'Brien PC, Des Moines, IA, for Plaintiff.

Jared G. LeBlanc, Leif A. Olson, Welsh Chapoton LLP, Houston, TX, Matthew Whitaker, Whitaker Hagenow & Gustoff LLP, Des Moines, IA, for Defendants.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is Brett C. Moody Investments, L.L.C.'s ("Moody Investments," "Defendant," or the "Company") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion"), filed October 15, 2013. Clerk's No. 55. On November 1, 2013, First American Title Insurance Company ("First American" or "Plaintiff") filed its resistance. Clerk's No. 56. Moody Investments replied on November 12, 2013. Clerk's No. 57. The Motion is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court set forth the pertinent factual and procedural background of this case in its August 16, 2013 summary judgment ruling. *See* Order (Clerk's No. 51) at 2–4. The additional facts that follow were not recounted in this prior order, but are relevant to this Motion.

Moody Investments is a Texas limited liability company with its principal place of business located in Houston, Texas. Decl. of Brett C. Moody in Supp of Def.'s Mot. ("Moody Decl.") (Clerk's No. 55–2) ¶ 3. The Company has never solicited or transacted business in Iowa. *Id.* ¶ 6. "It has no office, employees, or real or personal property in Iowa, [and] has never paid corporate, franchise, or property taxes in Iowa." *Id.* There is no evidence that Moody In-

vestments ever directed communications to Iowa in connection with this lawsuit. In fact, First American contacted representatives of the other defendant in this lawsuit—Moody National M Des Moines IA, L.L.C. ("Moody Des Moines")—who directed First American to wire the funds at issue in this case to Moody Investments' bank account. Pl.'s Resistance to Def.'s Mot. and Alternative Req. To Transfer Venue ("Pl.'s Resistance Br.") (Clerk's No. 56) at 6. This wire transfer was initiated in Orlando, Florida by one of First American's representatives, and the funds were sent to Amegy Bank in Houston, Texas. Moody Decl. ¶ 7.

## II. STANDARD OF REVIEW [1]

When a defendant moves to dismiss a lawsuit for a lack of personal jurisdiction, the plaintiff—not the defendant—bears the burden of proof. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, No. 5:11–cv–6052, 2012 WL 601232, at *1–2, 2012 U.S. Dist. LEXIS 22859, at *4 (W.D.Mo. Feb. 23, 2012) (internal citation omitted). The plaintiff is entitled to the benefit of all factual disputes. *Id.* at *1–2, 2012 U.S. Dist. LEXIS 22859 at *4–5. To conclude that it has personal jurisdiction over a non-resident defendant, a court must determine both that the requirements of the forum state's long-arm statute are met and that asserting personal jurisdiction over the defendant comports with due process. *Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). Asserting personal jurisdiction over a defendant comports with due process if the defendant has purposefully established minimum contacts with the forum state.[2] *Asahi Metal Indus. Co.*

---

**1.** Personal jurisdiction can be general or specific. Because First American only argues specific jurisdiction as a basis for asserting personal jurisdiction over Moody Investments, *see* Pl.'s Resistance Br. at 5–9, the

Court need not analyze general jurisdiction as an alternative basis for personal jurisdiction over the Company.

**2.** "Personal jurisdiction precedents call for a two-part analysis," *Daimler, AG v. Bauman,*

*v. Super. Ct. of Cal.*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations and quotation marks omitted). "[In other words,] it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations and quotation marks omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ... or the unilateral activity of another party or a third person. . . ." *Id.* (internal citations and quotation marks omitted). "[Personal] [j]urisdiction is proper ... [only] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (internal citations omitted). Physical presence within the forum state is, however, not required. *Id.* at 476, 105 S.Ct. 2174.

In addition to these basic due process principles, courts in this Circuit analyze the following five factors in deciding whether asserting personal jurisdiction over a non-resident defendant violates due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi–Tel Holdings, Inc.*, 89 F.3d at 522–23 (internal citations omitted). The first three factors are deemed primary while the last two are considered secondary. *Id.* at 523 (internal citations omitted). With this legal framework in mind, the Court turns to analyzing Defendant's Motion.

## III. ANALYSIS

 Moody Investments insists that its contacts with Iowa are "non-existent," [3] and that the Court should, therefore, dismiss all of First American's claims against the Company. Def.'s Br. in Supp. of Its Mot. ("Def.'s Br.") (Clerk's No. 55–1) at 2. First American resists dismissal, arguing that however limited Moody Investments' contacts with Iowa may be, they are "sufficient [under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ] to sustain the exercise of personal jurisdiction." Pl.'s Resistance Br. at 6. In the event that the Court concludes that it lacks personal jurisdiction over Moody Investments, First American requests that the Court transfer the case to the Southern District of Texas instead of dismissing it.[4] *Id.* at 11–12.

---

—— U.S. ——, 134 S.Ct. 746, 764, 187 L.Ed.2d 624 (2014) (Sotomayor, J., concurring), at least in the context of specific jurisdiction, *see id.* at 134 S.Ct. at 762 n. 20. If a district court concludes that the defendant has minimum contacts with the forum state, it must also decide whether asserting personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co.*, 480 U.S. at 113, 107 S.Ct. 1026 (internal citation and quotation marks omitted). Because the Court has determined that Moody Investments has no minimum contacts with Iowa, *see infra* pp. 987–90, it

need not address this second prong of the specific jurisdiction analysis.

3. The Iowa long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005). Therefore, the Court's analysis is limited solely to deciding whether the assertion of personal jurisdiction over Moody Investments in Iowa offends due process.

4. To the extent that this alternative request can be construed as a separate motion by

To assert personal jurisdiction over Moody Investments under the so-called *Calder* effects test, First American would have to establish that: "(1) [Moody Investments' tortious act [5]] w[as] intentional; (2) w[as] uniquely or expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered [in Iowa]." *See Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir.2010) (quoting *Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125, 1132 (S.D.Iowa 2004)). Thus, the *Calder* effects test " 'allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state.' " *Id.* (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir.1991)). It is important to note, however, that the *Calder* test does not displace the five-factor personal jurisdiction test set forth above, *see supra* p. 987; rather, it "requires the consideration of additional factors when an intentional tort is alleged." *Dakota Indus., Inc.*, 946 F.2d at 1391 (internal citation omitted). Therefore, even assuming that the *Calder* effects test is satisfied in this case,[6] "absent additional contacts, mere ef-

First American, it violates the local rules of this District. *See* LR 7(e) ("A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a new motion."). The Court, however, has decided to excuse such non-compliance for the following two reasons. First, Moody Investments does not object to the transfer of this case to the Southern District of Texas. *See* Def.'s Reply to Pl.'s Resistance Br. (Clerk's No. 57) at 4. Second, applicable legal authority not only permits, but also encourages such a transfer as "a preferable alternative to dismissal." *See Thompson v. Ecological Science Corp.*, 421 F.2d 467, 470 n. 4 (8th Cir.1970) (internal citation omitted).

5. The tortious act that Moody Investments allegedly committed was the refusal to return the funds at issue once First American notified the Company that the funds had been remitted in error. *See* Pl.'s Resistance Br. at 6–7 (arguing that Moody Investments' refusal to return the funds in question constitutes conversion even though the Company's "initial exercise of control over ... [the money] [wa]s not wrongful").

6. Assuming, *arguendo*, that First American could satisfy factors (1) and (3), it has not shown that Moody Investments' tortious act—its refusal to return the funds in question—was "uniquely or expressly aimed at [Iowa]." *See Johnson*, 614 F.3d at 796. To satisfy this second element, First American must establish that Moody Investments refused to return the funds at issue "for the very purpose of having ... [the] consequences [of such refusal] felt in the forum state." *See Dakota In-*

*dus., Inc.*, 946 F.2d at 1390–91. Refusing to pay an in-state plaintiff, however, is not " 'uniquely or expressly aimed at the forum state' ... or 'performed for the very purpose of having [its] consequences felt in the forum state' in such a way that the defendant should 'ha[ve] clear notice that it is subject to suit there.' " *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594–95 (8th Cir.2011) (internal citations omitted).

First American attempts to distinguish this case from the *Viasystems* scenario by claiming that Moody Investments' alleged tortious act was specifically targeted at Iowa because the Company knew that the funds at issue were supposed to pay property taxes owed to Dallas County, Iowa. *See* Pl.'s Resistance Br. at 7, 8. Even assuming that a defendant's failure to pay money that the plaintiff has earmarked for the payment of real estate taxes uniquely targets the forum state where such real estate is located, thus satisfying the second prong of the *Calder* effects test, that is not what occurred in this case. Indeed, by its own admission, First American demanded the return of the funds at issue once the property taxes had already been paid to Dallas County, Iowa. *See* Pl.'s Resistance Br. at 2–3 ("First American then contacted Brett Moody, the sole member of Moody Investments, and informed him that the funds had been improperly returned and that IA Lodging had paid $252,473.00 in property taxes on West Des Moines property.... First American demanded that Moody return the amount of the Dallas County taxes paid by IA Lodging...."). Therefore, Moody Investments' refusal to return the funds could not have been " 'unique-

fects in the forum state are insufficient to confer personal jurisdiction." [7] *Johnson,* 614 F.3d at 797 (internal citation omitted); *accord AmerUs Group Co. v. Ameris Bancorp,* No 4:06–cv–00110, 2006 WL 1452808, at *6 (S.D.Iowa May 22, 2006) (holding that "the 'effects' of a tortious act can[not]

> ly or expressly aimed at ... [Iowa]' ... or 'performed for the very purpose of having [its] consequences felt in ... [Iowa]' in such a way that ... [the Company] should 'ha[ve] clear notice that it is subject to suit there.' " *See Viasystems, Inc.,* 646 F.3d at 594–95 (internal citations omitted). Accordingly, since the second element of the *Calder* effects test has not been met, First American's reliance on this effects test is misplaced.

7. This holding is consistent with the position taken by other Circuits. *See AmerUs Group Co. v. Ameris Bancorp,* No. 4:06–cv–00110, 2006 WL 1452808, at *6–7 (S.D.Iowa May 22, 2006) (citing cases from the Third, Seventh, and Ninth Circuits holding that an allegedly tortious act's effects within the forum state, absent some additional contacts, are insufficient for purposes of personal jurisdiction).

8. First American nevertheless insists that Moody Investments has sufficient minimum contacts with Iowa for purposes of personal jurisdiction and states the following in support:

> First American's claims have a lot to do with Iowa—they relate to the sale of an Iowa property and the payment of Iowa property taxes. And Moody Investments has a lot to do with these issues: it was the recipient of the very funds that were supposed to pay those Iowa taxes on that Iowa property. Indeed, Moody [Des Moines] representatives specifically directed First American to wire the funds into the account owned by Moody Investments. Given these facts, to say that Moody Investments was not "involved" in the transfer of funds or that First American's claims have "nothing" to do with Iowa truly "taxes the credulity of the credulous." *Maryland v. King,* —— U.S. ——, 133 S.Ct. 1958, 1980, 186 L.Ed.2d 1 (2013) (Scalia, J., dissenting). Pl.'s Resistance Br. at 5–6. The Court is not persuaded. The fact that First American's claims against Moody Investments are related to the sale of a property located in Iowa and the payment of property taxes to Dallas Coun-

subject a defendant to personal jurisdiction in a forum where no other contacts exist"). This is fatal to First American's case because the record lacks any evidence of such other contacts with Iowa on the part of Moody Investments.[8] Therefore,

ty, Iowa does nothing to establish that Moody Investments has sufficient minimum contacts with Iowa. Furthermore, by its own admission, First American had no communications with Moody Investments until after the funds at issue had been wired into Moody Investments' bank account. *See* Pl.'s Resistance Br. at 2–3 (explaining that First American contacted representatives of Moody Des Moines-not Moody Investments-to arrange for the reimbursement of the funds at issue, and that First American contacted Moody Investments to demand the return of these funds only after it became clear that the reimbursement was done in error). By that time, the underlying property sale and all related transactions had long been completed, which makes it extremely unlikely that Moody Investments had any involvement in these underlying transactions. Indeed, First American has only shown (1) that Moody Investments received the funds in question via a wire transfer initiated by a First American employee in Florida and routed through banks outside of Iowa and (2) that the Company refused to return these funds after First American informed it that the transfer had been done in error. Thus, although First American is correct in asserting that " 'specific jurisdiction can arise from a single contact with the forum state,' " *see* Pl.'s Resistance Br. at 9 (quoting *AmerUs Group Co.,* 2006 WL 1452808, at *9), such contact is precisely what is lacking in this case.

Furthermore, First American does not resort to alternative means of showing Moody Investment's minimum contacts with Iowa, such as agency or assignment. "Agency relationships ... may be relevant to the existence of *specific* jurisdiction," *Daimler AG,* 134 S.Ct. at 759 n. 13, but First American does not claim that Moody Investments "purposefully avail[ed] itself of [this] forum by directing its agents ... to take action [in Iowa]," *see id.* Indeed, First American has proffered no evidence that Moody Des Moines, its employees or agents, or any other individuals or entities acted as agents for Moody Invest-

on the record before it, the Court concludes that First American has not met its burden of making a prima facie showing of personal jurisdiction over Moody Investments.[9] *See Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." (internal citation omitted)).[10]

## IV. CONCLUSION

For the foregoing reasons, the Court finds that it cannot assert personal jurisdiction over Moody Investments. Instead of dismissing First American's claims against the Company, however, the Court directs the Clerk of Court to transfer First American's claims against Moody Investments to the Southern District of Texas, Houston Division. Therefore, Defendant's Motion to Dismiss (Clerk's No. 55) is DENIED.

The sole claim that remains in this forum is First American's breach-of-contract claim against Moody Des Moines. On August 16, 2013, however, the Court granted summary judgment on this claim in favor of First American. *See* Order (Clerk's No. 51) at 8–11. Because the Court has decided to transfer all of First American's

claims against Moody Investments to the Southern District of Texas, it finds "no just reason for delay[ing]" the entry of final judgment on the breach-of-contract claim. *See* Fed.R.Civ.P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."). Therefore, the Clerk of Court is hereby directed to enter judgment in favor of First American on its breach-of-contract claim against Moody Des Moines.

IT IS SO ORDERED.

---

ments in connection with the underlying events in this case, such that their potential contacts with Iowa can be imputed to the Company for purposes of specific jurisdiction. Similarly, to the extent it can be claimed that Moody Des Moines assigned its right to receive the funds at issue to Moody Investments, *see supra* p. 986, there is at least a colorable argument that Moody Des Moines's jurisdictional contacts with Iowa can be imputed to Moody Investments for purposes of personal jurisdiction over the Company. *See generally Ostrem v. Prideco Secure Loan Fund, L.P.*, 841 N.W.2d 882 (Iowa 2014). Although the Court is doubtful that such an argument would have carried the day for First American, *see Ostrem*, 841 N.W.2d at 893–896, the issue was not even raised.

**9.** Because the nature, quality, and quantity of Moody Investments' contacts with Iowa are insufficient for purposes of personal jurisdiction over the Company in this case, the Court need not analyze the remaining three factors of the five-factor personal jurisdiction test. *See Fastpath, Inc. v. Arbela Technologies Corp.*, 953 F.Supp.2d 971, 978–979 (S.D.Iowa July 3, 2013) (concluding that if the first two factors in the five-factor test—nature, quality, and quantity of the defendant's contacts with the forum state—are lacking, the remaining three factors cannot tip the scales in favor of asserting personal jurisdiction over the defendant).

**10.** Notably, *Burger King Corp.* was decided after *Calder.*