# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-2510

———————

| | | |
|---|---|---|
| Mark Vandelune and Julie Vandelune, | * | |
| individually and as parents of Chelsea | * | |
| Vandelune and Tasia Vandelune, | * | |
| | * | |
| Plaintiffs - Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| 4B Elevator Components Unlimited; | * | |
| Synatel Instrumental Ltd., | * | |
| | * | |
| Defendants - Appellees. | * | |

———————

Submitted: January 16, 1998
Filed:   June 30, 1998

———————

Before LOKEN and MURPHY, Circuit Judges, and WEBBER,* District Judge.

———————

LOKEN, Circuit Judge.

Plaintiff Mark Vandelune was seriously injured in a grain dust explosion while working at the Consolidated Cooperative Grain Elevator ("Consolidated") in Gowrie, Iowa.  Contending that a faulty M700 Speedswitch Monitor proximately caused the

———————

*The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri, sitting by designation.

explosion and injury, Vandelune commenced this product liability suit against Synatel Instrumentation Ltd. ("Synatel"), the British manufacturer of the M700, and 4B Elevator Components Ltd. ("4B"), its independent distributor. Vandelune's wife and two children also sued, claiming loss of consortium. The district court granted 4B's motion for summary judgment, denied the Vandelunes' motion to amend their complaint against 4B, and dismissed Synatel for lack of personal jurisdiction. The Vandelunes appeal. We affirm as to 4B but reverse and remand as to Synatel.

## I. Defendant 4B

When an elevator leg becomes plugged with grain, the conveyor belt may slip causing friction and heat, which can ignite grain dust. Federal safety regulations require that most grain elevators be equipped with a motion sensor that will stop the conveyer belt when its speed is reduced by twenty percent of its normal operating speed. See 29 C.F.R. § 1910.272(q)(5). The M700 is one such device manufactured by Synatel of Staffordshire, England. Consolidated's elevator at Gowrie was equipped with the M700 at the time of the October 1994 explosion.

Synatel sold the M700 in question to Braime Elevator Components, Ltd., of Leeds, England. Braime sold the M700 to 4B, a Braime affiliate located in Peoria, Illinois. In early 1994, 4B sold the M700 to Keith's Complete Service ("Keith's") of Boone, Iowa. Keith's sold the M700 to Consolidated to replace an M700 installed in 1992 by a local electrician. Keith's owner, Keith Pfrimmer, who is not an electrician, installed the replacement M700 in the Gowrie elevator's west leg, wiring the new M700 in the same manner as the one it replaced.

The M700 was designed with two safety features that a customer may -- but need not -- connect at installation. The first is a warning light or siren intended to be triggered when conveyor belt speed is reduced by ten percent of normal operating speed. The second automatically stops the conveyer belt when its speed falls to twenty

percent below normal operating speed. Pfrimmer did not connect the twenty percent shutdown feature because Consolidated's electrician had left that feature unconnected on the M700 Pfrimmer was replacing. The Vandelunes' expert tested the M700 after the explosion and determined that its ten percent warning device malfunctioned, in that it was not triggered until the conveyor belt speed was reduced by more than twenty percent. The Vandelunes assert claims against 4B (and Synatel) for negligent failure to warn that the twenty percent safety feature should be connected and for negligent manufacture and testing of the malfunctioning M700.

The district court granted summary judgment dismissing these claims against 4B. On appeal, we review the grant of summary judgment *de novo,* examining the evidence in the light most favorable to the nonmoving party, in this case the Vandelunes. See Fed. R. Civ. P. 56(e); Bituminous Cas. Corp. v. Tonka Corp., 9 F.3d 51, 52 (8th Cir. 1993), cert. denied, 511 U.S. 1083 (1994). To establish a claim of negligence, the Vandelunes must prove that 4B owed a duty to conform to a given standard of conduct, that 4B's breach of that standard was a proximate cause of Mark Vandelune's injury, and damages. See Gremmels v. Tandy Corp., 120 F.3d 103, 105 (8th Cir. 1997).

**Failure To Warn.** The M700 instructions told users and installers how to connect the ten percent safety alarm and the twenty percent shutdown features. Relying upon the deposition testimony of their expert, the Vandelunes argue that 4B was negligent in failing to specifically warn grain elevator customers that OSHA regulations require them to connect the M700's twenty percent shutdown feature. The district court rejected this claim for two independent reasons: because there is no evidence that 4B should have known that grain elevator users would not connect the twenty percent safety feature, and because any failure to warn was not a proximate cause of the explosion since Pfrimmer knew of the OSHA requirement and did not look at the M700 instructions when installing the replacement at Consolidated's elevator.

The Supreme Court of Iowa has adopted § 388 of the Restatement (Second) of Torts to determine whether a manufacturer or supplier has satisfied its duty to warn of a product's dangerous propensities. "[T]he duty to warn is based upon superior knowledge of the manufacturer or supplier as to the dangers a certain product poses." Lamb v. Manitowoc Co., 570 N.W.2d 65, 68 (Iowa 1997); see Nichols v. Westfield Indus., Ltd., 380 N.W.2d 392, 401 (Iowa 1985). "[T]here is no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product." Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 687 (8th Cir. 1981) (applying Restatement § 388 under Nebraska law). Here, OSHA regulations imposed a duty on Consolidated, the purchaser of the M700, to install a motion sensor device with a twenty percent shutdown feature. Though 4B sold equipment to grain elevators and doubtless knew of the risks of grain dust explosions, it did not have greater knowledge of such risks than its ultimate customers. Moreover, the M700 did not *create* an explosion risk; it was designed to alleviate a risk the customer itself creates. In these circumstances, we agree with the district court that 4B had no duty to warn.

Alternatively, even if 4B owed a duty to warn, we agree with the district court that any breach of that duty was not a proximate cause of Mark Vandelune's injuries. Pfrimmer testified he was aware of the OSHA regulation requiring a twenty percent shutdown feature but nevertheless did not connect that feature on the new M700 because he simply duplicated the wiring of the M700 being replaced. The record does not reflect why Consolidated instructed its electrician not to connect the shutdown feature on the first M700, thereby violating the OSHA regulation. Moreover, Pfrimmer did not even consult the M700 instructions and warnings in performing his work. Thus, 4B's lack of an explicit warning was not a proximate cause of the explosion.

**Negligent Manufacture and Testing.** The Vandelunes contend that the M700 was negligently manufactured, tested, and inspected because the ten percent safety feature malfunctioned when tested by their expert after the explosion. The Vandelunes

acknowledge that 4B received the M700 in a sealed box and did not open the box before reshipping the product ten days later. But they argue 4B is liable for this negligence because the M700 was designed and manufactured "in joint cooperation" between Synatel, Braime, and 4B. The district court dismissed these claims because there is no evidence 4B negligently designed or manufactured the M700 and no evidence 4B had reason to believe the M700 was not reasonably safe for its intended use. We agree. Whatever the involvement of Braime in inducing Synatel to design the M700 for the United States market, there is no evidence 4B participated in the design and manufacture of that product in England. Therefore, 4B as reseller cannot be liable for negligent manufacture. See Nichols, 380 N.W.2d at 397. Likewise, 4B cannot be liable for negligent failure to inspect or test because there is no evidence it knew or had reason to know that the M700 "is, or is likely to be, dangerous." Spaur v. Owens-Corning Fiberglas Corp., 510 N.W.2d 854, 864 (Iowa 1994), quoting Restatement (Second) of Torts § 402.

**Denial of Motion To Amend.** After the district court dismissed Synatel for lack of personal jurisdiction, the Vandelunes moved to amend their complaint to add claims against 4B for strict liability and breach of the implied warranty of merchantability. The district court denied this motion as futile under IOWA CODE ANN. § 613.18(1)(a), a 1986 statute granting resellers who did not design or manufacture a product immunity from such claims arising "solely from an alleged defect in the original design or manufacture of the product." On appeal, the Vandelunes argue that the district court abused its discretion in denying their motion to amend, relying on prior Iowa case law without discussing § 613.18(1)(a). We conclude the district court properly applied this new statute. See Bingham v. Marshall & Huschart Mach. Co., 485 N.W.2d 78, 79-80 (Iowa 1992). Thus, there was no abuse of discretion in denying the motion to amend.

The district court properly granted summary judgment dismissing the claims of Mark Vandelune against 4B. Therefore, the derivative claims of his wife and children

against 4B also fail.  See St. John v. International Ass'n of Machinists, 139 F.3d 1214, 1217 n.1 (8th Cir. 1998).

## II.  Defendant Synatel

Synatel moved to dismiss for lack of personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).  The district court concluded that Synatel was properly served under Iowa's long-arm statute, IOWA CODE ANN. § 617.3, and Synatel does not challenge that ruling. The question then is whether exercise of personal jurisdiction comports with due process,  a question that turns on whether Synatel had the requisite minimum contacts with the forum State of Iowa.  This requirement is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted).

The due process issue in this case is a recurring one -- when may an out-of-state or foreign manufacturer be required to defend product liability claims in the forum State of the injured plaintiff.  The district court concluded that exercise of personal jurisdiction over Synatel would not comport with due process because "the only indication of any contact by Synatel with the state of Iowa is evidence that Synatel placed its product, the M700 Speedswitch Monitor, into the stream of commerce in the United States and the product ended up in the state of Iowa."  In concluding this is not action "purposefully directed toward the forum state," the court relied upon the lead opinion in Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987).  But the court erred in overlooking our recent opinion in Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610 (8th Cir.), cert. denied sub nom. Hosoya Fireworks Co. v. Barone, 513 U.S. 948 ( 1994).

We explained in Barone that the Supreme Court in Asahi split four-to-four on the broad question whether introducing products into the "stream of commerce" satisfies

the due process requirement of minimum contacts in a product liability case. Thus, this remains an open question. Moving to a more fact intensive analysis, we acknowledged in Barone that a manufacturer whose product ends up in the forum State on an "attenuated, random, or fortuitous" basis has not purposefully directed its activities at residents of that State. That is the teaching of Burger King, 471 U.S. at 475, and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296-97 (1980). It was the fact pattern in our post-Asahi cases on which the district court relied, Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir.), cert. denied, 506 U.S. 908 (1992), and Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 375 (8th Cir. 1990). But we distinguished those cases in Barone, concluding that, when a foreign manufacturer "pour[s] its products" into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has "purposefully reaped the benefits" of the laws of each State in that trade area for due process purposes. 25 F.3d at 615.

Barone controls the personal jurisdiction issue raised by this appeal. It is true that Synatel is a foreign corporation having no office, agents, employees, or property in the State of Iowa, and that Synatel neither advertises nor directly solicits business in Iowa. Those are facts supporting its motion to dismiss for lack of personal jurisdiction. But, as Barone illustrates, the absence of this kind of direct marketing presence does not necessarily mean that Synatel has not purposefully marketed the M700 in Iowa. The discovery record reflects that, at the urging of Braime, Synatel designed the M700 for United States markets, particularly the substantial grain elevator market. Synatel agreed to distribute the M700 through a Braime affiliate, 4B. Synatel put its distinctive "Owl" logo and an identifying 4B decal on each M700. Synatel shipped some M700s directly to 4B at the request of Braime, and Synatel employees attended technical support meetings at 4B's facilities in Peoria, Illinois, which is about eighty miles from the Iowa border. Between October 1, 1993, and September 30, 1994, Synatel sold 619 M700s to 4B, 81 of which were resold into Iowa. These are not "attenuated, random, or fortuitous" contacts with the forum State.

When the district court has resolved an issue of personal jurisdiction without a trial or evidentiary hearing, as in this case, we review *de novo* whether plaintiffs have made a prima facie showing of personal jurisdiction, viewing the facts in the light most favorable to them. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). We conclude that the Vandelunes have made such a showing in this case, and therefore Synatel's motion to dismiss for lack of personal jurisdiction should have been denied.

The judgment of the district court in favor of defendant 4B Elevator Components Unlimited is affirmed. The judgment in favor of Synatel Instrumental Ltd., is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.