ALLIANZ GLOBAL CORPORATE AND SPECIALTY MARINE INSURANCE COMPANY, Plaintiff,

v.

WATTS REGULATOR CO., Defendant.

No. 4:14–cv–00253.

United States District Court, S.D. Iowa, Central Division.

Signed Feb. 25, 2015.

Brian G. Cunningham, Foran Glennon Palandech, Ponzi & Rudloff PC, Chicago, IL, J. Michael Weston, Lederer Weston Craig PLC, Cedar Rapids, IA, Benjamin Michael Weston, Lederer Weston Craig PLC, West Des Moines, IA, for Plaintiff.

Kevin J. Caster, Dana L. Oxley, Shuttleworth & Ingersoll P.L.C., Cedar Rapids, IA, Seth Bryan Goldberg, Shari Claire Lewis, Rivkin Radler LLP, Uniondale, NY, for Defendant.

## ORDER

ROBERT PRATT, District Judge.

Before the Court is Watts Regulator Co.'s ("Watts" or "Defendant") Motion to Dismiss ("Motion") for lack of personal jurisdiction, filed September 12, 2014. Clerk's No. 7. Allianz Global Corporate and Specialty Marine Insurance Company ("Allianz" or "Plaintiff") was granted two unresisted extensions of time to file a response to the Motion (*see* Clerk's Nos. 9, 19), and filed a response on January 9, 2015 (Clerk's No. 21). Watts replied on January 26, 2015. Clerk's No. 28. A hearing on the Motion was held on February 10, 2015. Clerk's No. 35. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Allianz is an Illinois corporation in the business of providing insurance and financial services to customers across the United States, including in Iowa. Am. Compl. ¶ 1 (Clerk's No. 3). Allianz insured a property in West Des Moines that was owned by Wright Service Corporation ("Wright"), an Iowa corporation that provides vegetation management and utility services. *Id.* ¶¶ 2–3. Watts designs, manufactures, and sells plumbing products, and is a Massachusetts corporation with its primary place of business in Massachusetts. *Id.* ¶ 4.

On March 17, 2013, Wright's property suffered significant flooding and water damage. *Id.* ¶ 8. An Allianz adjuster concluded that the flooding was caused by a failed "strainer valve on the backflow system." Clerk's No. 21–18 at 4. The failed strainer was identified as a Watts Regulator Bronze Series Wye Strainer manu-

factured between 2001 and 2007.[1] Clerk's No. 22–1 at 4. The wye strainer was manufactured and designed by a Watts subsidiary in Taiwan, and distributed by Watts. Am. Compl. ¶ 7; Hr'g Tr. at 18.[2] Pursuant to Wright's insurance policy, Allianz paid approximately $628,183.71 for damages caused by the event. Am. Compl. ¶ 9.

Allianz now asserts four claims against Watts in connection with the allegedly faulty wye strainer: (1) negligence; (2) products liability; (3) breach of the implied warranty of merchantability; and (4) breach of the implied warranty of fitness for a particular purpose. *Id.* ¶¶ 10–29. Allianz seeks to recover the $628,183.71 it paid under Wright's insurance policy. *Id.* Watts moved to dismiss the case for lack of personal jurisdiction, and the parties conducted limited jurisdictional discovery. *See* Clerk's Nos. 7, 9.

## II. LAW AND ANALYSIS

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state. Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004) (internal quotation omitted). When the Court holds an evidentiary hearing on the issue of personal jurisdiction, the plaintiff bears the burden of proving the existence of jurisdiction by a preponderance of the evidence. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991). The plaintiff's burden is tested "not by the pleadings alone, but by the affidavits and

---

1.  A wye strainer is a common part that filters unwanted debris out of plumbing lines. Clerk's No 7–2 ¶ 4.

2.  Citations to the Hearing Transcript are generated from a rough draft of the February 10, 2015, motion hearing transcript provided to the Court by the court reporter.

exhibits presented with the motions and in opposition thereto." *Dever,* 380 F.3d at 1072 (internal quotation omitted).

■ In a diversity action, the Court may assert jurisdiction over a nonresident defendant only to the extent allowed by Iowa's long-arm statute and the Due Process Clause of the United States Constitution. *Id.* at 1073. "Because Iowa's long-arm statute 'provides for the broadest expanse of personal jurisdiction consistent with due process,' the Court's analysis is limited to whether the exercise of personal jurisdiction comports with due process." *Wells Fargo Fin. Leasing, Inc. v. NCH Healthcare Sys., Inc.,* 756 F.Supp.2d 1086, 1091 (S.D.Iowa 2010) (quoting *State ex rel. Miller v. Grodzinsky,* 571 N.W.2d 1, 3 (Iowa 1997)).

Due process mandates that personal jurisdiction exists only if a defendant has sufficient "minimum contacts" with the forum state, such that summoning the defendant to the forum state would not offend " 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). To maintain personal jurisdiction, a defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In evaluating a defendant's reasonable anticipation, there must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Jurisdiction is proper, therefore, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum state. *Id.; World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." [3] *Dever,* 380 F.3d at 1073. Allianz asserts that personal jurisdiction is proper under both theories.

### A. *General Jurisdiction*

■ General jurisdiction stands for the proposition that a defendant's contacts with a State are sufficiently broad so that "due process is not offended" by subject-

---

**3.** The parties dispute the viability of the Eighth Circuit's five-factor test for evaluating minimum contacts: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of such contact; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *See Dever,* 380 F.3d at 1073–74. The Court agrees with the Iowa Supreme Court that the five-factor test "no longer provide[s] a useful analytical framework for determining personal jurisdiction under current case law." *Capital Promotions, LLC v. Don King Prod. Inc.,* 756 N.W.2d 828, 834 (Iowa 2008). The five-factor test, in form, has been subsumed by Supreme Court case law analyzing jurisdiction under the stream of commerce theory. But each factor still exists in substance because the Court necessarily considers each factor when following the guidelines for analyzing specific jurisdiction as set forth by the Supreme Court. *See Downing v. Goldman Phipps, PLLC,* 764 F.3d 906, 912 (8th Cir.2014) (explaining that the first two factors apply to both general and specific jurisdiction, the third factor applies only to specific jurisdiction, and the last two factors "carry less weight and are not dispositive.") (quotation omitted).

ing the defendant to personal jurisdiction in that State "[e]ven when the cause of action does not arise out of or relate to the [defendant's] activities in the forum State." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To establish that general personal jurisdiction exists, Allianz must show that Watts had "continuous and systematic contacts" with Iowa such that Watts is "essentially at home" here. *Daimler AG v. Bauman,* ── U.S. ──, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014). For a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Id.* at 759 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* ── U.S. ──, 131 S.Ct. 2846, 2854, 180 L.Ed.2d 796 (2011)).

Under this standard, it is clear that Watts is not subject to general jurisdiction in Iowa. Watts is incorporated and has its primary place of business in Massachusetts. Am. Compl. ¶ 4. Watts has no property, mailing addresses, bank accounts, phone numbers, employees or branch offices in Iowa. Clerk's No. 7–1 at 7; *see Guinness Import Co. v. Mark VII Distrib., Inc.,* 153 F.3d 607, 614 (8th Cir.1998) (discussing these factors as part of the jurisdiction analysis). Watts does not pay taxes in Iowa, and has no agent for service of process in Iowa. Clerk's No. 7–1 at 7. Allianz argues that Watts utilizes a regional distribution system to "pour its products" into Iowa, such that general jurisdiction is appropriate. *See* Clerk's No. 21 at 12–13. But although this type of stream of commerce analysis may support the imposition of specific jurisdiction, it is an inadequate basis for the exercise of general jurisdiction. *See Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 597 (8th Cir.2011) (citing *Goodyear,* 131 S.Ct. at 2851). Accordingly, Allianz has not met its burden of proving the Court has general jurisdiction over Watts.

### B. *Specific Jurisdiction*

Specific jurisdiction over a defendant arises when the defendant "purposefully direct[s]" its activities at the forum state, and the plaintiff's injury "'arise[s] out of or relate[s] to' those activities." *Burger King Corp.,* 471 U.S. at 472–73, 105 S.Ct. 2174 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). The exercise of jurisdiction must also comport with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

#### 1. *Watts "purposefully directed" its actions at Iowa.*

Here, Watts' connection to Iowa stems from its placement of plumbing products into the stream of commerce. The Supreme Court originally recognized the stream of commerce theory in *World–Wide Volkswagen. See* 444 U.S. at 297–98, 100 S.Ct. 559 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."). Since then, the Supreme Court has decided two important stream of commerce cases, with neither case producing a majority opinion. In *Asahi,* a four-justice concurrence written by Justice Brennan noted that simply placing goods into the stream of commerce is enough to establish personal jurisdiction "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State." 480 U.S. at 117, 107 S.Ct. 1026. In contrast, the four-justice plurality opinion written by Justice

O'Connor concluded that, in addition to a defendant's expectation that its goods would be sold in the forum state, the plaintiff must also establish some affirmative conduct by the defendant that indicates an intent to serve the forum market. *Id.* at 112, 107 S.Ct. 1026. Justice O'Connor's approach is sometimes referred to as stream of commerce "plus." *See, e.g., Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 479 (6th Cir.2003).

Following *Asahi,* stream of commerce cases have split, with some circuits adopting Justice Brennan's more lenient approach, and some adopting Justice O'Connor's "plus" approach. *See id.* at 480 ("we make clear today our preference for Justice O'Connor's stream of commerce 'plus' approach"); *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 947 (7th Cir.1992) (explaining that it was deciding the case "on the basis of the more permissive stream of commerce theory" rather than "the more stringent minimum contacts test set forth in Justice O'Connor's plurality opinion in *Asahi* ").

In the Eighth Circuit, it is not clear that either approach has been wholly adopted. In *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* the Eighth Circuit relied on Justice O'Connor's opinion in concluding that a Japanese company that "place[d] a product into the stream of commerce, without more, [did] not constitute an act ... purposefully directed toward the forum State." 906 F.2d 369, 376 (8th Cir. 1990) (citing *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026). Later, in *Barone v. Rich Brothers Interstate Display Fireworks Co.,* 25 F.3d 610, 614 (1994), the Eighth Circuit appeared to adopt Justice Brennan's more lenient view by stating "it appears that five justices [in *Asahi* ] agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum

state represents sufficient minimum contacts to satisfy due process." But in *Vandelune v. 4B Elevator Components Unlimited,* 148 F.3d 943, 947–48 (8th Cir.1998), the court declined to take a clear position, noting that "whether introducing products into the 'stream of commerce' satisfies the due process requirement of minimum contacts in a product liability case ... remains an open question" after the *Asahi* split.

In 2011, the Supreme Court decided *J. McIntyre Machinery, Ltd. v. Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), which also failed to garner a majority opinion. In that case, Justice Kennedy wrote for a three-justice plurality. The plurality held that a British company was not subject to personal jurisdiction in New Jersey when the company had targeted the entire United States for sale of its metal-shearing machines, and only four of those machines ended up in New Jersey. 131 S.Ct. at 2786. The plurality rejected Justice Brennan's approach in *Asahi* by concluding that "fairness and foreseeability" are not enough to establish jurisdiction over a defendant who places goods in the stream of commerce. *Id.* at 2788. Instead of fairness, the *Nicastro* plurality stated that the focus should be on the defendant's actions, specifically "whether a defendant has followed a course of conduct directed at the society of economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *Id.* at 2789. The *Nicastro* plurality noted that its decision was "consistent with Justice O'Connor's opinion in *Asahi.*" *Id.* at 2790.

Justice Breyer, writing for a two-justice concurrence in *Nicastro,* saw no need for the Court "to announce a rule of broad applicability without full consideration of the modern-day consequences." *Id.* at

2791. Instead, he concluded that the case could be resolved on existing precedent, noting that the British company's isolated sales in New Jersey were not enough to establish jurisdiction over the foreign company. *Id.* at 2792. Notably, Justice Breyer observed the absence of a "regular [ ] flow" or " 'regular course' of sales" into New Jersey, as well as the lack of " 'something more,' such as special state-related design, advertising, advice, marketing, or anything else." *Id.*

The Eighth Circuit has not reconsidered its application of the stream of commerce theory since *Nicastro* was decided.[4] The Fifth and Federal Circuits are the only federal appellate courts that have considered how *Nicastro* affects the existing law on stream of commerce theory. *See Ainsworth v. Moffett Eng'g, Ltd.,* 716 F.3d 174 (5th Cir.2013); *AFTG–TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358 (Fed.Cir. 2012). Both Circuits concluded that *Nicastro* did not change existing stream of commerce law because "[w]hen a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation omitted); *see Ainsworth,* 716 F.3d at 178; *AFTG–TG,* 689 F.3d at 1363. Both *Ainsworth* and *AFTG–TG* concluded that Justice Breyer's *Nicastro* concurrence, which advised that no change in the existing stream of commerce law was necessary to resolve the case, supplied the narrowest grounds for the decision. *Ainsworth,* 716 F.3d at 178;

*AFTG–TG,* 689 F.3d at 1363. District courts in the Eighth Circuit have also reached this conclusion. *See State Farm Fire & Cas. Co. v. Watts Water Tech., Inc.,* No. 4:13–cv–3037, 2013 WL 5278330, at *5 (D.Neb. Sept. 18, 2013) (citing *Ainsworth* and *AFTG–TG* and stating that the court was "not persuaded that the stream of commerce theory, as it has been applied by the Eighth Circuit, is no longer viable [after *Nicastro* ]"); *Federal Ins. Co. v. Steris Corp.,* No. 11–cv–0078, 2012 WL 5187790, at *6 (D.Minn. Oct. 19, 2012) ("The Court proceeds on the premise that [*Nicastro* ] did not change the Supreme Court's jurisdictional framework and thus applies Eighth Circuit case law interpreting the Supreme Court's existing stream of commerce precedent.").

In contrast, several district courts have concluded that Justice Breyer's *Nicastro* concurrence actually rejected Justice Brennan's more lenient approach, and delineated requirements that more closely resembled those announced by Justice O'Connor in *Asahi. See Smith v. Teledyne Continental Motors, Inc.,* 840 F.Supp.2d 927, 931 (D.S.C.2012) ("This Court therefore construes [*Nicastro* ] as rejecting the foreseeability standard of personal jurisdiction."); *Windsor v. Spinner Indus. Co., Ltd.,* 825 F.Supp.2d 632, 638 (D.Md.2011) ("[*Nicastro* ] clearly rejects foreseeability as the standard for personal jurisdiction."); *Oticon, Inc. v. Sebotek Hearing Sys., LLC,* 865 F.Supp.2d 501, 516 (D.N.J.2011) ("Neither knowledge or expectation of sales to a particular forum state is enough to establish jurisdiction according to both the plurality opinion and the concurring opinion [in *Nicastro* ]."); *see also Monje v. Spin Master*

---

4. The Eighth Circuit has considered two specific jurisdiction cases since *Nicastro,* neither of which directly involved stream of commerce theory. *See Fastpath, Inc. v. Arbela Tech. Corp.,* 760 F.3d 816 (2014); *Pangaea,*

*Inc. v. Flying Burrito LLC,* 647 F.3d 741 (2011). Likewise, the Iowa Supreme Court has not analyzed *Nicastro's* impact on its stream of commerce law.

*Inc.*, CV–09–1713–PHX–GMS, 2013 WL 2369888 at *6 (D.Ariz. May 29, 2013) ("Justice Breyer endorsed Justice O'Connor's formulation of the stream of commerce theory in *Asahi*. He was looking for something more and could not find it in the record in [*Nicastro* ]"). Accordingly, those courts applied the stream of commerce "plus" test. *See id.* That approach is also consistent with the plurality opinion in *Nicastro*. *See* 131 S.Ct. at 2790. Thus, the Court is faced with two options in this case: (1) conclude that *Nicastro* did not change the law and apply preexisting Eighth Circuit stream of commerce law; or (2) apply the stream of commerce "plus" analysis described by Justice O'Connor in *Asahi* and adopted by the plurality in *Nicastro*. The Court concludes that it is not necessary to decide which analysis applies because, under either one, the exercise of personal jurisdiction over Watts is appropriate in this case. The Court will address the facts of this case under both analyses below.

### a. *Existing law.*

The two most relevant Eighth Circuit cases are *Barone* and *Vandelune*. The facts of this case are very similar to *Barone*. There, the court concluded that a Japanese fireworks manufacturer was subject to personal jurisdiction in Nebraska based on its utilization of an independent distributor in South Dakota that distributed fireworks on a regional scale. *Barone*, 25 F.3d at 611–12. The court noted that the manufacturer's nationwide distribution system with "strategically placed distributors" was evidence of its "efforts to place its products in the stream of commerce in the Midwest." *Id.* at 614. In *Vandelune*, the Eighth Circuit similarly held that a British manufacturer of a grain elevator part was subject to personal jurisdiction in Iowa because the manufacturer utilized a distributor in Peoria, Illinois to market its product here. 148 F.3d at 948. *Vandelune* concluded that "when a foreign manu-facturer 'pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has 'purposefully reaped the benefits' of the laws of each State in that trade area for due process purposes." *Id.* (citing *Barone*, 25 F.3d at 615); *see also Clune v. Alimak AB*, 233 F.3d 538, 543 (8th Cir.2000) (stating that "when a seller heads a distribution network it realizes the much greater economic benefit of multiple sales in distant forums, which in turn may satisfy the purposeful availment test") (internal quotation omitted).

■ Watts distributes its products nationwide by utilizing independent regional sales companies. Clerk's No. 7–2 at 4. Watts' website allows people to locate sales representatives in their area. Clerk's No. 22–1 at 9. In Iowa, Watts' sales representative is Mack McClain & Associates ("McClain"). *Id.* McClain sells plumbing products, manufactured by Watts and several other companies, in Iowa, Nebraska, Kansas, Missouri, and Illinois. *See* Clerk's No. 222. McClain has offices in West Des Moines. Clerk's No. 21–6 at 4. Watts' sales data shows that it had sales of approximately $10 million in Iowa for each of the two years preceding this lawsuit. Clerk's No 7–2 at 5; Hr'g Tr. at 2. That total included sales of between 1,193 and 1,369 wye strainers per year in Iowa alone. Clerk's No. 22–9 at 2; Hr'g Tr. at 2. Although those numbers may represent a small percentage of Watts' nationwide sales, the numbers prove that the presence of Watts' products in the Iowa market is not the result of "attenuated, random, or fortuitous" circumstances. *See Vandelune*, 148 F.3d at 948. Rather Watts utilized a local sales representative to continuously "pour its products" into Iowa. *See Barone*, 25 F.3d at 615. Thus, the evidence shows that Watts purposefully

availed itself of doing business in this state, and it would not offend due process to subject Watts to personal jurisdiction in Iowa.

### b. Stream of commerce plus.

The Court also concludes that the facts of this case allow specific personal jurisdiction over Watts even under the more stringent stream of commerce plus test first articulated by Justice O'Connor in *Asahi.* Justice O'Connor noted that "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state." 480 U.S. at 112, 107 S.Ct. 1026. Examples of actions that "indicate an intent or purpose to serve the market in the forum State" include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* at 113, 107 S.Ct. 1026. On the other hand, simple "awareness that the stream of commerce may or will sweep the product into the forum State" does not constitute action "purposefully directed toward the forum State." *Id. Nicastro* similarly articulated that the focus of the due process analysis is on the defendant's actions directed toward the forum state. *See* 131 S.Ct. at 2789 ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.").

The facts of this case are readily distinguishable from those of *Nicastro* and *Asahi,* where the Supreme Court concluded that the exercise of personal jurisdiction violated due process. *Nicastro* concluded that a British company could not be subject to personal jurisdiction in a state where only a few of its products were sold when the company marketed in the United States generally and could not be said to have targeted that particular state. 131 S.Ct. at 2786; *see also Williams v. Romarm, SA,* 756 F.3d 777, 785 (D.C.Cir. 2014) (concluding that a foreign firearms manufacturer was not subject to personal jurisdiction in Washington, D.C., based on the use of one distributor that sold its products across the entire United States); *Powell v. Profile Design, LLC,* 838 F.Supp.2d 535, 542–46 (S.D.Tex.2012) (concluding that a company was not subject to personal jurisdiction in Texas when the company never shipped products to Texas and utilized only one nationwide-distributor, which was located in Minnesota). In *Asahi,* the Supreme Court concluded that California did not have specific jurisdiction over a Japanese manufacturer who "did not create, control, or employ the distribution system that brought its valves to California." 480 U.S. at 106, 112, 107 S.Ct. 1026.

In this case, the defendant is a domestic corporation that utilizes a regional distribution system to permeate its products into specific areas of the United States. Unlike the Japanese manufacturer in *Asahi,* Watts has control over its distribution system and can choose where and how it sells its products. Watts utilized a sales representative with offices in Iowa and had sales totaling several million dollars per year in this state. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026 (identifying the use of a "sales agent in the forum State" as evidence of purposeful availment). The sales were fairly consistent in the three years preceding this lawsuit, showing that Watts "followed a course of conduct directed at the society or economy existing within the jurisdiction" of Iowa, *Nicastro,* 131 S.Ct. at 2789, and demonstrating that the wye

strainer did not appear here as a result of "attenuated, random, or fortuitous circumstances," *Vandelune*, 148 F.3d at 948.

Watts argues that its sales in Iowa represented only a small percentage of its nationwide sales. For example, in 2013, Watts' Iowa sales represented only 1.52% of its nationwide sales total.[5] Hr'g Tr. at 11–12. However, sales of $10 million dollars per year are hardly insignificant and represent a regular flow of Watts' products into the Iowa market. *See Nicastro*, 131 S.Ct. at 2792 (noting the absence of a regular flow or course of sales in that case). The use of a local sales representative coupled with the large quantity of sales in Iowa demonstrates that Watts' "purposefully avail[ed] itself of the privilege of conducting activities within [Iowa], thus invoking the benefits and protections of its laws." *Id.* at 2787.

### 2. *Allianz's injury arises out of Watts' Iowa activities.*

■ Watts also argues that Allianz hasn't shown that the wye strainer at issue was actually purchased in Iowa; thus even if Watts has purposefully availed itself of the Iowa market, specific jurisdiction is not appropriate in this case. The Court disagrees. Allianz produced a plumbing permit for the Wright property in West Des Moines that shows the plumbing work for the building was conducted by an Iowa plumbing contractor in 2007. Clerk's No. 21–16. Allianz produced evidence that McClain, a dedicated sales representative for the state of Iowa with offices in Iowa, is a part of Watts' distribution system. *See* Clerk's No 21–17 at 7. Records show that McClain sold Watts' wye strainers to

several Iowa plumbing supply businesses, including some with zip codes in the Des Moines metro area. *See* Clerk's No. 22–8 at 2. Although the Court is aware that Watts does not have the burden of proving jurisdiction, it is notable that Watts cannot offer any evidence to show the wye strainer was *not* purchased in Iowa. Based on the facts proven by Allianz—that the wye strainer was installed in an Iowa building by an Iowa corporation and that Watts has a sales distribution network in Iowa—it is a logical inference that the wye strainer at the Wright property was in fact purchased in this state. Accordingly, the Court concludes that Allianz has proven by a preponderance of the evidence that its injury arose out of Watts' activities in Iowa.

### 3. *Exerting jurisdiction over Watts comports with "traditional notions of fair play and substantial justice."*

■ When evaluating whether jurisdiction comports with traditional notions of fair play and substantial justice

[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination that 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies.'

*Asahi*, 480 U.S. at 113, 107 S.Ct. 1026 (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559). In evaluating the burden to the defendant, *Nicastro* illustrated a scenario where, under a more

---

**5.** Watts cites *Viasystems* and *Goodyear* for the proposition that such a small percentage of sales cannot form the basis for personal jurisdiction. Hr'g Tr. at 17; Clerk's No. 28 at 6. However, the discussion in both of those cases was in regard to general, rather than specific, jurisdiction. *Viasystems*, 646 F.3d at 589; *Goodyear*, 131 S.Ct. at 2851. The Court is not persuaded that the same proposition should apply to an analysis of specific jurisdiction.

lenient view of stream of commerce theory, small local farmers may be subject to burdensome lawsuits when their products are shipped nationwide by large distributors. *Id.* at 2790. But here such concerns are mitigated because Watts is a large corporation that does business around the country and has "been sued in multiple jurisdictions." Hr'g Tr. at 20. It is not unduly burdensome to subject a company of Watts' size to jurisdiction in a state where it sells millions of dollars of products every year.

Watts argues that Iowa has no interest in resolving this dispute because Allianz is an Illinois corporation and Watts is a Massachusetts corporation. Hr'g Tr. at 8. But the wye strainer at the heart of this case was installed in an Iowa business, allegedly failed in Iowa, and was subsequently tested at Iowa State University. *See* Clerk's No. 21–19. Further, the scope of Watts' business in Iowa bolsters the state's interest in resolving this dispute, and any others that may arise involving Watts' products. The Court also concludes that it would be most efficient to resolve this dispute in Iowa, where, as noted, the wye strainer allegedly failed and all subsequent inspection and testing of the product was performed. Accordingly, the exercise of jurisdiction over Watts comports with "traditional notions of fair play and substantial justice."

### III. CONCLUSION

In sum, the Court concludes that Watts has sufficient minimum contacts with Iowa because it purposefully directed its activity at the state by utilizing a regional distributor with offices in Iowa to market and sells its products here. The injury to Allianz arose out of those actions when one of the products distributed by Watts caused substantial flooding at the Wright property. Accordingly, asserting personal jurisdiction over Watts is consistent with due process. Defendant's Motion to Dismiss (Clerk's No. 7) is DENIED.

IT IS SO ORDERED.